[Civ. No. 55924. Second Dist., Div. Two. Oct. 18, 1979.]

CATHERINE C. McGEE, Plaintiff and Appellant, v.
A. BRIAN WEINBERG, Defendant and Respondent.

---

**COUNSEL**

Catherine C. McGee, in pro. per., for Plaintiff and Appellant.

Haight, Dickson, Brown & Bonesteel, Roy G. Weatherup and Stephen D. Flaherty for Defendant and Respondent.

---

**OPINION**

**BEACH, J.—**

## NATURE OF APPEAL:

Plaintiff appeals from order sustaining demurrer without leave to amend. The basis of the order sustaining the demurrer was that the action was barred by the statute of limitations. We amend the order of the superior court by adding a paragraph dismissing the action and thereby treat the appeal as one from the judgment of dismissal. (*Bellah* v. *Greenson,* 81 Cal.App.3d 614 [146 Cal.Rptr. 535].)

## FACTS:

Appellant filed a complaint for malpractice against respondent who, as her lawyer, represented appellant in a divorce action in 1963. The gist of the allegations of appellant's complaint is that when respondent prepared a stipulation, order and judgment, he negligently failed to provide that appellant's former husband would be required to maintain appellant as the irrevocable beneficiary of his life insurance as long as appellant

remained unmarried, and whether or not former husband continued his then employment.

The allegations of the second amended complaint, which for the purposes of demurrer are deemed true, disclose the following: In 1963 appellant hired respondent to represent her. Respondent prepared a complaint and thereafter prepared a stipulation which was executed by the parties to the divorce action. The terms of the stipulation were incorporated in an order of the court, which in turn became part of the interlocutory judgment entered December 27, 1963. As drafted by respondent, these documents provided that husband was to maintain wife as irrevocable beneficiary on certain group life insurance policies which he owned through his employer, Revell, Inc., provided that wife did not remarry. It was wife's (appellant here) understanding that husband was to maintain these particular policies in wife's favor for the rest of his life, or provide other equivalent insurance coverage whether he continued to be employed at Revell or elsewhere, so long as wife remained unmarried. Respondent, however, negligently drafted the stipulation, order and judgment. He failed to provide that husband would maintain such policies or other comparable policies if he should terminate his employment at Revell, and limited the provisions in the stipulation, order and judgment to simply the policies at Revell. Husband terminated at Revell in September 1969. He went to work elsewhere. At that time the policies had a value of $20,000. Husband did not maintain or convert the policies or obtain others in their place. Shortly thereafter, appellant asked her former husband if she was still covered. He told her that she was. This was not true. Appellant, however, had no information that the policies were not in effect. She thereupon contacted respondent lawyer and asked if something should be done. Respondent advised her that nothing should be done because any effort to ensure the maintenance of the same or comparable insurance policies might result in husband's challenging the alimony and child support payments set forth in the interlocutory judgment. Former husband died in January 1973 and appellant did not receive any insurance proceeds. She has remained unmarried.

It is clear appellant knew in 1973 no insurance proceeds were paid to her. But she alleges she did not discover that she had possible claims and rights against respondent until the spring of 1975 when, in conference with another attorney, Anthony Uribe, concerning a personal injury lawsuit, she related the facts and Uribe advised that she had a case against respondent. On November 4, 1976, within two years of the conference with Uribe, appellant filed her complaint against respondent for malpractice.

Appellant's Contention:

 Appellant contends that the then applicable two-year statute of limitations (Code Civ. Proc., § 339, subd. 1) did not begin to run until she spoke to the lawyer in 1975 and learned that she had a right to sue respondent for malpractice.

Discussion:

We reject appellant's contention and we affirm the judgment of the trial court.

The record discloses that at the time of the former husband's death, appellant had knowledge of the alleged facts which gave rise to a cause of action. She knew that she had been damaged. She received no money from any insurance proceeds on husband's death in 1973. She did nothing for more than two years from the date of husband's death.

The legal malpractice statute applicable here is the two-year period established by former Code of Civil Procedure section 339, subdivision 1.[1] (*Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand,* 6 Cal.3d 176 [98 Cal.Rptr. 837, 491 P.2d 421].) Under the rule of *Neel,* the cause of action against an attorney accrues when "the plaintiff knows, or should know, all material facts essential to show the elements" of the cause of action. (*Neel, supra,* at p. 190.) Knowledge of facts is what is critical, not knowledge of legal theories.

 When a complaint shows on its face that it is barred by a statute of limitations, a general demurrer may be sustained and a judgment of dismissal may be entered. (*Zapata* v. *Meyers,* 41 Cal.App.3d 268, 272 [115 Cal.Rptr. 854].) The critical issue here is the determination of the time in which the two-year statute of limitations began to run, and whether this is a question of law because all of the facts to answer the question are alleged within or on the face of the complaint.

 In our view the statute of limitations on the legal malpractice claim commenced no later than the time of the death of appellant's former husband. The alleged negligent act of defendant attorney, respondent herein, occurred in 1963 when he drafted the stipulation which the plaintiff herself signed. Even then, according to appellant, its

[1]The statute has since been changed to one year. (Code Civ. Proc., § 340.6.)

terms were different from the supposed "understanding" of the parties. The harm resulting from the supposed negligence was the failure of appellant to recover life insurance benefits upon the death of her former husband in January of 1973. This was more than three and one-half years prior to the filing of the legal malpractice complaint. In *Budd* v. *Nixen,* 6 Cal.3d 195 [98 Cal.Rptr. 849, 491 P.2d 433], the court stated that the time period commences when any "appreciable and actual harm flowing from the attorney's negligent conduct establishes a cause of action upon which the client may sue." (*Budd* v. *Nixen, supra,* 6 Cal.3d at p. 201.) This rule was reiterated in *Davies* v. *Krasna,* 14 Cal.3d 502 [121 Cal.Rptr. 705, 535 P.2d 1161, 79 A.L.R.3d 807], where the courts explain that the statute of limitations "begins to run on certain causes of action when the injured party discovers or *should have discovered the facts* supporting liability." (*Davies* v. *Krasna, supra,* 14 Cal.3d at p. 512, italics added.)

The question here is whether appellant's alleged ignorance of her supposed rights against her former attorney is sufficient to toll the statute of limitations.

█ The statute of limitations is not tolled by belated discovery of *legal theories,* as distinguished from belated discovery of *facts.* In legal and medical malpractice cases, the courts are often confronted with such claims that the statute of limitations has been tolled. However, the Supreme Court repeatedly has explained that it is the knowledge of facts rather than discovery of legal theory, that is the test. The test is whether the plaintiff has information of circumstances sufficient to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to his or her investigation. (*Sanchez* v. *South Hoover Hospital,* 18 Cal.3d 93, 101 [132 Cal.Rptr. 657, 553 P.2d 1129].) If the plaintiff believes that someone has done something wrong because of the damages suffered by her, such a fact is sufficient to alert a plaintiff "to the necessity for investigation and pursuit of her remedies." (*Sanchez* v. *South Hoover Hospital, supra,* 18 Cal.3d at p. 102.) █ At bench, appellant had complete knowledge of her loss when she failed to receive the $20,000 in insurance benefits at the time of her former husband's death. She then had every opportunity to further explore the facts and to consult an attorney if necessary. Under the "inquiry" rule of *Sanchez,* the statute of limitations began to run at least no later than the time of her former husband's death.

This is a case in which appellant had sufficient facts to put her on inquiry. The means of knowledge are equivalent to knowledge. (*Gray* v.

*Reeves,* 76 Cal.App.3d 567 [142 Cal.Rptr. 716]; Civ. Code, § 19.) At bench appellant had sufficient actual and constructive knowledge to begin the running of the statute of limitations. This is so even though it may not have occurred to appellant to bring suit against the former attorney until she had discussed the situation with Attorney Uribe. (*Gray* v. *Reeves, supra,* 76 Cal.App.3d at p. 577.)

Knowledge of certain facts triggers the operation of the statute. At bench, these facts allegedly are: (a) the prospective plaintiff has been damaged; she received no money at husband's death; (b) the damage was caused by the negligence of the lawyer. If she has this much information, whether or not the prospective plaintiff knows or believes she has a legal cause of action (discovery of legal theory) is immaterial. (*Bellah* v. *Greenson, supra,* 81 Cal.App.3d 614.)

If the contentions advanced by appellant were accepted, the practical effect would be to nullify the statutes of limitations. Any plaintiff could simply allege ignorance of his or her legal rights against a particular defendant. This is not difficult. Most people do not know the legal answers to questions arising from certain circumstances. However, facts and events which inform a person that something is wrong, or should be looked into, are usually recognizable by the ordinary person. One example is pain. Another example is failure to receive money when expected or promised, as at bench. It is the occurrence of some such cognizable event rather than knowledge of its legal significance that starts the running of the statute of limitations.

■ Statutes of limitations are enacted as matters of public policy designed to promote justice and prevent the assertion of stale claims after the lapse of long periods of time. (*Pashley* v. *Pacific Elec. Ry. Co.,* 25 Cal.2d 226 [153 P.2d 325].) Statutes of limitations are not disfavored in the law. To the contrary they are favored in the law because they promote desirable social ends and give security and stability to human affairs. (*Scheas* v. *Robertson,* 38 Cal.2d 119 [238 P.2d 982].) The case at bench clearly illustrates the public policy issues that are pertinent to the statutes of limitations. If the allegations of appellant were held sufficient to toll the statute of limitations, then a trial court would be forced to reconstruct the facts and circumstances of a divorce proceeding occurring more than 15 years ago. It would be necessary to adjudicate the alleged understandings and intentions of various individuals, at least one of whom is dead.

The order of the superior court from which the purported appeal is taken is modified and amended by adding thereto a paragraph dismissing the action. The resulting judgment of dismissal is affirmed.

Roth, P. J., and Fleming, J., concurred.