[Civ. No. 20734. Third Dist. Feb. 19, 1982.]

LUCILLE GRAHAM, Plaintiff and Appellant, v.
JAMES T. HANSEN et al., Defendants and Respondents.

COUNSEL

Porter, Scott, Weiberg & Delehant, James K. Mirabell and Melvin E. Raatz for Plaintiff and Appellant.

Wilke, Fleury, Hoffelt & Gray, Scott L. Gassaway and Alan G. Perkins for Defendants and Respondents.

OPINION

**PUGLIA, P. J.**—Plaintiff appeals from a judgment of dismissal entered after the trial court granted defendants' motion for summary judgment. We affirm.

Plaintiff filed a complaint for medical malpractice in November 1977. The complaint alleges that in the summer of 1975, plaintiff was suffering from a gastronomic disorder. Her physician, Dr. Anthony, referred plaintiff to defendants for treatment.

Codefendant Dr. James Hansen examined plaintiff on July 29, 1975, and diagnosed plaintiff's ailment as a possible ulcer. He requested plaintiff check into Roseville Memorial Hospital on August 1, 1975, so that an internal gastric photographic examination (esophagogastroduodenoscopy) could be performed. This procedure involves passing a scope through the oral cavity to view for ulcers. The examination was being performed on an out-patient basis and it was anticipated the procedure

would take approximately one-half hour to complete. Dr. Hansen assured plaintiff the procedure involved no risk.

During the examination, plaintiff's esophagus was perforated, and complications resulted. Plaintiff remained in the hospital for several months. Her complaint alleges the examination was negligently performed and caused her injury.

The physician-patient relationship between plaintiff and defendants terminated in November 1975. Plaintiff filed her action in November 1977, two and one-quarter years after the alleged negligent conduct. Her only pleaded excuse for the late filing is that she relied on statements and representations made to her by defendants and thus failed to seek other advice or ascertain the true cause of her condition until within one year prior to filing her complaint.

Defendants answered, denying the allegations contained in the complaint and alleging, as an affirmative defense, the running of the statute of limitations, claiming plaintiff had not filed her action within one year after actual or constructive discovery of her injury. (See Code Civ. Proc., § 340.5; hereafter, all statutory references are to sections of the Code of Civil Procedure unless otherwise indicated.)

After completion of substantial discovery, defendants moved for summary judgment on the ground the action was barred by the statute of limitations. They asserted plaintiff was aware of a right of action premised on the theory of lack of informed consent as soon as she realized she had been injured and, contrary to Dr. Hansen's assurance, the procedure had not been completely safe. Defendants argued that as the statute of limitations had run as to this theory of malpractice, the limitations period had expired as to all theories of malpractice.

Plaintiff opposed the motion, insisting there was a triable issue of fact as to the discovery date for medical malpractice premised on lack of informed consent; alternatively, plaintiff argued that even if there were no issue of fact in this regard, defendants were incorrect in their assertion that if the statute of limitations had run as to one theory of malpractice, it had run as to all other possible theories. In ruling on the motion, the trial court declared any claim based on lack of informed consent was barred by the statute of limitations. Nonetheless, the court denied the motion for summary judgment, impliedly rejecting the theory urged

by defendants, and allowed the action to proceed on plaintiff's claim of negligence in the performance of the examination.

Nearly one year later, defendants filed what they describe as a combined motion for reconsideration and second motion for summary judgment. Defendants claimed further discovery had revealed "new facts" which conclusively demonstrated plaintiff could not prove her allegation that she had discovered her cause of injury within one year prior to the filing of her complaint. Plaintiff opposed the motion, asserting (1) the motion for reconsideration was not timely filed; (2) the new facts were insufficient to support a motion for reconsideration, and (3) triable issues of fact existed as to the date of plaintiff's discovery and the possible tolling of the statute of limitations. Following hearing and argument, the trial court, without comment, granted the motion for summary judgment and dismissed the action.

I

Before reaching the merits of the order granting summary judgment, we address plaintiff's contention that the trial court erred in entertaining defendants' combined motion for reconsideration and summary judgment. Plaintiff points out that section 1008, subdivision (a), requires all motions for reconsideration be made within 10 days of the date the party seeking reconsideration received notice of the court's order.[1] Plaintiff contends the second motion for summary judgment was, on its face, simply an attempt to gain reconsideration of the denial of the first motion for summary judgment. Since the second motion was not filed within 10 days after defendants received notice of the order denying the first motion, plaintiff contends the second motion is untimely.

---

[1] Section 1008 provides: "(a) When an application for an order has been made to a judge, or to the court, and refused in whole or in part, or granted, or granted conditionally, or on terms, any party affected by the order may, within ten (10) days after knowledge of the order and based upon an alleged different state of facts may [*sic*], make application to the same judge who made the order, to reconsider the matter and modify, amend or revoke the prior order. [¶] (b) When the party who originally made an application for an order which was refused in whole or part, or granted conditionally or on terms, makes a subsequent application for the same order upon an alleged different state of facts, it shall be shown by affidavit what application was made before, when and to what judge, what order or decision was made thereon, and what new facts are claimed to be shown. For a failure to comply with this requirement, any order made on such subsequent application may be revoked or set aside on ex parte motion. [¶] (c) A violation of this section may be punished as a contempt; and an order made contrary thereto may be revoked by the judge or commissioner who made it, or vacated by a judge of the court in which the action or proceeding is pending."

■ While plaintiff accurately characterizes section 1008, subdivision (a), according to its effect, the fact is defendant's second motion for summary judgment, regardless of its label, was not a motion for reconsideration but rather a subsequent application for summary judgment. (Cf. *Harth v. Ten Eyck* (1941) 16 Cal.2d 829, 832-833 [108 P.2d 675].) The statutory provisions relating to motions for renewal (i.e., subsequent applications for the same order) are found in section 1008, subdivision (b). These provisions contain no requirement that a motion for renewal be made within the 10-day time period as is required for motions for reconsideration.

Prior to the enactment of section 1008, subdivision (a) (Stats. 1978, ch. 631, § 2, eff. Jan. 1, 1979), there was no statutory authorization for a motion for reconsideration, even though such motions were regularly made and heard. (See *San Francisco Lathing, Inc. v. Superior Court* (1969) 271 Cal.App.2d 78, 81 [76 Cal.Rptr. 304].) However, only the moving party was permitted to request reconsideration of a ruling on its motion, and such a request could only be made when the motion had been denied. (See *Harth v. Ten Eyck, supra*, 16 Cal.2d at pp. 832-833; *Dunas v. Superior Court* (1970) 9 Cal.App.3d 236, 239 [87 Cal.Rptr. 719].) The sole remedy of a nonmoving party was a motion to vacate pursuant to section 473, which permits the court to relieve a party from an order taken against that party through his mistake, inadvertence or excusable neglect. (See *San Francisco Lathing, Inc. v. Superior Court, supra*, 271 Cal.App.2d at p. 82.)

Newly enacted section 1008, effective January 1, 1979, contains provisions relating both to motions for reconsideration and for subsequent applications for the same order. (Stats. 1978, ch. 631, § 2.) Subdivision (a) of that section now permits any affected party to seek reconsideration of a court's order, regardless of how the court ruled on the motion, provided the motion is based upon an alleged "different" set of facts and is made within 10 days of knowledge of the court's order.

In section 1008, subdivision (b), however, the Legislature left the prior law virtually unchanged with respect to subsequent applications by the moving party for the same order.² As did its predecessor section,

---

²Former section 1008 (repealed Stats. 1978, ch. 631, § 1) provided: "When an application for an order has been made to a judge, or to the court, and refused in whole or in part, or granted conditionally, or on terms, and subsequent application for the same order, upon an alleged different state of facts, shall be made, it shall be shown by affidavit what application was before made, when and to what judge, what order or

subdivision (b) applies to renewals based upon "new" facts and imposes no time limitations on such motions. We have found nothing in the legislative history to indicate any such limitation was intended.

Indeed, to place a time limitation on motions for renewal would produce a result inimical to the efficient administration of justice. When "new" facts come to the attention of the moving party sufficient to justify renewal of a motion previously made, it would be nonsensical to disallow the later motion simply because discovery of the "new" facts was not made within 10 days after knowledge of the court's order on the original motion. Trial courts should be allowed to review, reweigh and modify an order when new facts are presented which demonstrate the need to do so. To apply a time limitation beyond which the court lacks power so to act would needlessly burden the courts and the litigants with plenary trials that were otherwise capable of summary resolution. We cannot conceive that the Legislature intended such a result. It is apparent to us that the 10-day limitations period for motions for reconsideration based on "different" facts (§ 1008, subd. (a)) describes a remedy wholly discrete from the motion for renewal based on "new" facts long provided by statute and presently found in the recently enacted section 1008, subdivision (b).

Plaintiff also argues the claimed "new" facts (plaintiff's answer to an interrogatory and a declaration by plaintiff's counsel) were insufficient to support a motion for renewal. Whether the "new" facts alleged on a motion for renewal are sufficient to satisfy the requirements of section 1008, subdivision (b), is a question confided to the sound discretion of the trial court, with the exercise of which we will not interfere absent an obvious showing of abuse. This record manifests no such abuse.

## II

Turning to the merits of the ruling under review, we are satisfied the trial court correctly determined the action was barred by the statute of limitations as a matter of law.

---

decision was made thereon and what new facts are claimed to be shown. For a failure to comply with this requirement, any order made on such subsequent application may be revoked or set aside on ex parte motion. [¶] A violation of this section may be punished as a contempt; and an order made contrary thereto may be revoked by the judge or commissioner who made it, or vacated by a judge of the court in which the action or proceeding is pending." (Cf. present § 1008, subd. (b), at fn. 1, *ante*, p. 969.)

The limitations statute governing medical malpractice actions is section 340.5, which reads in part: "In an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury *or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury*, whichever occurs first. In no event shall the time for commencement of legal action exceed three years unless tolled for any of the following: (1) upon proof of fraud, (2) intentional concealment, or (3) the presence of a foreign body, which has no therapeutic or diagnostic purpose or effect, in the person of the injured person. . . ." (Italics added.)

The question here is whether there is a triable issue of fact with respect to plaintiff's discovery of, or the exercise or not of reasonable diligence by plaintiff in discovering, the alleged actionable cause of her injury. While the reasonableness of a delayed discovery is ordinarily a question of fact, the issue presents a question of law when the evidence establishes beyond dispute that the plaintiff has failed to bring the action within one year after notice of its existence. (See *Sanchez* v. *South Hoover Hospital* (1976) 18 Cal.3d 93, 101 [132 Cal.Rptr. 657, 553 P.2d 1129]; *Christ* v. *Lipsitz* (1979) 99 Cal.App.3d 894, 898 [160 Cal. Rptr. 498].)

Plaintiff contends she did not realize she had a viable cause of action for medical malpractice until she contacted her attorney 24 months after the alleged malpractice and 18 months after she terminated the physician-patient relationship with defendants. This contention ignores the well-settled principle that ignorance of a legal theory of recovery against defendants is irrelevant. "The statute of limitations is not tolled by belated discovery of *legal theories*, as distinguished from belated discovery of *facts*. In legal and medical malpractice cases, the courts are often confronted with such claims that the statute of limitations has been tolled. However, the Supreme Court repeatedly has explained that it is the knowledge of facts rather than discovery of legal theory, that is the test. The test is whether the plaintiff has information of circumstances sufficient to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to his or her investigation." (Italics in original; *McGee* v. *Weinberg* (1979) 97 Cal.App.3d 798, 803 [159 Cal.Rptr. 86]; see also *Sanchez* v. *South Hoover Hospital, supra*, 18 Cal.3d at p. 101.) If plaintiff believes because of injuries she has suffered that someone has done something wrong, such a fact is

sufficient to alert a plaintiff "to the necessity for investigation and pursuit of her remedies." (*Sanchez* v. *South Hoover Hospital, supra,* 18 Cal.3d at p. 102; *Bellah* v. *Greenson* (1978) 81 Cal.App.3d 614, 622 [146 Cal.Rptr. 535].)

The evidence in support of the motion for summary judgment, primarily plaintiff's deposition testimony and answers to interrogatories, establishes beyond dispute plaintiff had sufficient facts to put her on inquiry more than one year prior to the time she filed her complaint. And, as "the means of knowledge are equivalent to knowledge" (*McGee* v. *Weinberg, supra,* 97 Cal.App.3d at p. 803), constructive knowledge will commence the running of the statute of limitations, even though it may not have occurred to plaintiff to bring suit until she had discussed the situation with her attorney. (See *McGee* v. *Weinberg, supra,* 97 Cal.App.3d at p. 804; *Gray* v. *Reeves* (1977) 76 Cal.App.3d 567, 577 [142 Cal.Rptr. 716]; see also *Christ* v. *Lipsitz, supra,* 99 Cal.App.3d at p. 898.)

Plaintiff submitted to a medical procedure which she was assured was perfectly safe, an examination which she was told would take approximately one-half hour, but which turned into a hospital stay of several months. Plaintiff knew within days of the examination that as a result she had suffered a perforated esophagus. Plaintiff admits that before her release from the hospital in September 1975 she had a suspicion Dr. Hansen had committed malpractice upon her (a suspicion which was not dispelled by defendants' suggestion to plaintiff's husband that the injury occurred because of an earthquake which struck during the examination). Plaintiff terminated the physician-patient relationship with Dr. Hansen and his group in early January 1976. Thereafter plaintiff on several occasions told Dr. Anthony that she continued to feel Dr. Hansen had done something wrong. Although Dr. Anthony had referred plaintiff to Dr. Hansen, he was not named as a defendant in plaintiff's complaint. Plaintiff discontinued treatment by Dr. Anthony in April 1976.

These facts demonstrate plaintiff had information with respect to her injury and its cause sufficient to place a reasonable person on inquiry as to the probability of actionable conduct on the part of defendants. (Cf. *Gray* v. *Reeves, supra,* 76 Cal.App.3d at p. 576.) Without question, "a prudent person would believe that if, in the course of an [examination] at one point on the body, a serious and painful injury occurred to another part of the body, there was cause for an investigation for the

purpose of determining whether there was fault on the part of the [doctors]." (*Mock* v. *Santa Monica Hospital* (1960) 187 Cal.App.2d 57, 66 [9 Cal.Rptr. 555].) "[F]acts and events which inform a person that something is wrong, or should be looked into, are usually recognizable by the ordinary person. One example is pain. . . . *It is the occurrence of some such cognizable event rather than knowledge of its legal significance that starts the running of the statute of limitations.*" (Italics added; *McGee* v. *Weinberg, supra,* 97 Cal.App.3d at p. 804.)

Even though all of the facts upon which her complaint is based were known to plaintiff by April 1976 at the latest, when she discontinued treatment with Dr. Anthony, plaintiff did nothing about the alleged malpractice until July 1977 when she first contacted an attorney and presumably was apprised, for the first time, of the legal significance of facts known to her well over a year. As we have pointed out, however, contemporaneous ignorance of a legal theory of recovery avails plaintiff nothing. (*McGee* v. *Weinberg, supra,* 97 Cal.App.3d at pp. 803-804; see *Christ* v. *Lipsitz, supra,* 99 Cal.App.3d at p. 898.)

Plaintiff contends that following the alleged negligent examination, Dr. Schild, a partner in the defendant medical group, counseled her that no malpractice had occurred, even though he had not examined plaintiff's medical records or consulted with Dr. Hansen. (Dr. Schild did not treat defendant after early January 1976.) Plaintiff asserts there is a triable issue of fact whether Schild's conduct constituted "intentional concealment" within section 340.5 such as would toll the statute of limitations.[3]

First, the cited tolling provision of section 340.5 applies only to the three-year, and not the one-year "discovery" limitations period. (See *Sanchez* v. *South Hoover Hospital, supra,* 18 Cal.3d at pp. 97-101, construing former Code Civ. Proc., § 340.5.) In *Sanchez, supra,* the court reasoned that to hold the tolling provision applicable to the one-year period would produce a result "at odds with common sense," since the mere fact of nondisclosure by the physician would indefinitely suspend the period within which the plaintiff could bring suit even though plaintiff had actually discovered the basis of an action for malpractice by other means or could have done so by the exercise of reasonable dili-

---

[3]Section 340.5 provides the time for commencement of legal action for medical malpractice shall not exceed three years "unless tolled for any of the following: (1) upon proof of fraud, (2) intentional concealment, . . ."

gence. (18 Cal.3d at p. 98.) The issue presented here is whether plaintiff filed suit within one year of discovery of, or within one year of the time when with reasonable diligence she should have discovered, the basis of an action for medical malpractice; thus any claim with regard to the three-year statute is irrelevant. (Cf. *id.*, at p. 101.)

Quite obviously plaintiff was aware of all the essential facts upon which her cause of action is based when her complaint was filed in November 1977. It would appear that *all* of these facts were known to plaintiff most likely by late 1975 and certainly no later than the April 1976 termination of her professional relationship with Dr. Anthony, the referring physician. If plaintiff learned any new fact in the more than 18 months that ensued before she filed her complaint, it has not been shown in the opposition to the summary judgment motion nor does it appear elsewhere in the record. By early 1976 at the latest, plaintiff either had or reasonably should have "become alerted to the necessity of investigation and pursuit of her remedies." (*Sanchez v. South Hoover Hospital, supra*, 18 Cal.3d at p. 102.) Plaintiff should have filed suit immediately, pursued discovery and examined defendants' medical records to resolve any question concerning the appropriate legal theories to vindicate any actionable wrongs contributing to her injury. (See *id.*, at p. 100; *Bellah v. Greenson, supra*, 81 Cal.App.3d at p. 624.) That she instead did nothing is unfortunate; nonetheless, the one-year statute of limitations clearly commenced no later than April 1976, and since more than one year elapsed before her complaint was filed, the action is barred. (Cf. *Sanchez v. South Hoover Hospital, supra*, 18 Cal.3d at p. 102.)

The judgment of dismissal is affirmed.

Blease, J., and Sparks, J., concurred.