[Civ. No. 63730. Second Dist., Div. Four. Aug. 18, 1982.]

ELIZABETH H. CALL, a Minor, etc., Plaintiff and Appellant, v. ARAM KEZIRIAN, Defendant and Respondent.

COUNSEL

Mix & Hodges, Terence J. Mix and Suzanne Leibowitz for Plaintiff and Appellant.

Voegelin & Barton, Charles J. Schufreider and Robert M. Rudnicki for Defendant and Respondent.

OPINION

KINGSLEY, Acting P. J.—Plaintiff appeals from an order of dismissal, entered after an order sustaining without leave to amend, a demurrer to her first amended complaint (hereinafter complaint). We reverse.

Marie Call, mother of Elizabeth, sued as guardian ad litem for Elizabeth Call, who was born on September 5, 1972. Elizabeth Call was a minor eight years old and incompetent at the time of suit.

Elizabeth Call was born with chromosomal anomalies known as Down's Syndrome. The complaint against Dr. Kezirian and Does alleges careless diagnosing and examining and treatment, and particularly, negligence for failure to diagnose the embryonic abnormality, advise of the condition, and to recommend a therapeutic abortion to plaintiff's parents.

Kezirian demurred on the grounds: (1) that plaintiff failed to state a cause of action (Code Civ. Proc., § 430.10) in that the cause of action is barred by the statute of limitations in Civil Code section 29 and (2) that plaintiff's cause of action depends on an allegation that defendants-respondents should have committed an illegal act (advise the parents to have an abortion).

In the amended complaint plaintiff attempted to allege facts which show that through the exercise of reasonable diligence her parents did not discover their cause of action prior to March 1979. Plaintiff alleged that the six-year old statute of limitations in Civil Code section 29 does not run until the discovery of the alleged negligence and they did not discover the negligence until an attorney advised them that Down's Syndrome (also called Mongolism) can be discovered through amniocentesis.

Plaintiff also opposed the demurrer on the grounds that Civil Code section 29 is an unconstitutional denial of equal protection in that it sets up an arbitrary classification of a minor's rights.

Plaintiff asserts also that she did not fall within the purview of Civil Code section 29 in that this statute is only applicable when the cause of action alleges "injury" prior to birth or during birth. Plaintiff alleges that defendant did not cause the mongolism (the injury) but that he failed to detect the connection through the procedure of amniocentesis thereby precluding the parents from having an abortion performed.

Plaintiff also contends that the doctor has a duty to inform his patient of potential birth defects in order to permit the parents to get a therapeutic abortion, even though these events in this case occurred prior to the United States Supreme Court's ruling in *Roe* v. *Wade* (1973)

410 U.S. 113 [35 L.Ed.2d 147, 93 S.Ct. 705]. Plaintiff alleges that the mother could have had a therapeutic abortion in other jurisdictions than the jurisdiction herein, prior to the *Roe* v. *Wade* decision.

The court sustained the demurrer without leave to amend on the grounds that the cause of action was barred by the statute of limitations and because no cause of action existed for failure to advise of potential birth defects and for failure to recommend a eugenic abortion prior to *Roe* v. *Wade*. The instant complaint had been filed more than seven years after plaintiff's birth.

### I

Since, as we set forth below, we conclude that the complaint alleges facts which, if accepted by a trial jury, would serve to toll any applicable statute of limitations, we need not, and do not, here consider the contentions as to the constitutionality or applicability of section 29. For the purposes of this opinion only, we assume that section 29 is constitutional and applicable to the facts of this case.

### II

Although the complaint alleges that defendant had a duty, not only to diagnose the abnormality and to advise the parents of that fact, it also alleges that the doctor had a duty to advise the parents to have an abortion.

We do not feel that it is necessary, in this case, to pass on the issue so presented. It is alleged that, if the parents had been seasonably advised of the abnormality, the mother would have gone to some jurisdiction where an abortion was legal. ■ We hold here only that an attending physician is under a duty, when treating a middle-aged woman, to test for Down's Syndrome and to advise the parents of the results of that test, leaving to the parents the decision as to seeking an abortion or permitting the fetus to develop to the point of delivery. The allegations charging a greater duty can be eliminated by amendment.

### III

In *Curlender* v. *Bio-Science Laboratories* (1980) 106 Cal.App.3d 811 [165 Cal.Rptr. 477], the appellate court held that a child had a cause of action for damages for pain and suffering to be endured in its life

span, and the appellate court created a cause of action that has become known in the legal literature as "wrongful life." The Supreme Court in *Turpin* v. *Sortini* (1982) 31 Cal.3d 220, 237 [182 Cal.Rptr. 337, 643 P.2d 954], recently dealt with the issue and held that recovery should be denied for a child's pain and suffering, where the allegation is that if the parents knew of the hereditary condition, they would not have conceived the baby. The Supreme Court in *Turpin* held recovery should be denied for the child's pain and suffering and other general damages, because it is impossible to determine whether plaintiff has in fact suffered an injury in being born rather than in not being born and it is impossible to assess general damages in any fair, nonspeculative manner. However, the *Turpin* court held that, even though general damages may not be recovered in such a case, damages for extraordinary expenses for specialized teaching and training and special equipment that plaintiff will need because of her defect are recoverable.

Therefore, since special damages may be received in a case such as this, plaintiff should have been permitted to amend her prayer to limit her demand to the kind of damages that *Turpin* held may be recovered.

## IV

We turn, then, to the issues of whether the complaint alleges facts sufficient to toll a statute of limitations. As we have said above, we conclude that it does.

Civil Code section 29 reads as follows: "A child conceived but not yet born, is to be deemed an existing person, so far as may be necessary for its interests in the event of its subsequent birth; but any action by or on behalf of a minor for personal injuries sustained prior to or in the course of birth must be brought within six years from the date of birth of the minor, and the time such minor is under any disability mentioned in Section 352 of the Code of Civil Procedure shall not be excluded in computing the time limited for the commencement of the action."

Plaintiff made the following allegation in attempt to toll Civil Code section 29.

"Plaintiff's parents, MARIA E. CALL and RICHARD CALL, did not discover the negligent cause of plaintiff's injuries, nor through the exercise of reasonable diligence could have discovered it, at anytime earlier than six years prior to the filing of this action; that at no time prior to retain-

ing attorneys on this matter on March 9, 1979, did any physician, or any other expert, express the opinion that defendants were negligent or a negligent cause of plaintiff's injuries; that at no time prior to March 9, 1979, did said parents hold the opinion that said defendants were negligent or a negligent cause of plaintiff's injuries; that at no time prior to March 9, 1979, did any of the defendants indicate in any way that their care and treatment of plaintiff or of plaintiff's mother, MARIA E. CALL, was in any way improper, and that only after an investigation by said attorneys, conducted after March 9, 1979, were plaintiff's said parents advised of the negligent and improper conduct of said defendants."

The question before us is whether the allegation that plaintiff's injuries were not discovered until attorneys conducted an investigation sufficient to toll the statute for purposes of demurrer, or whether, plaintiff's parents, in the exercise of reasonable diligence, should have discovered the alleged negligence earlier, since Down's Syndrome (also known as Mongolism) is detectable at birth.

The allegations in a complaint are treated as true for the purposes of ruling on a demurrer (*Custodio* v. *Bauer* (1967) 251· Cal. App.2d 303 [59 Cal.Rptr. 463, 27 A.L.R.3d 884]; *Berman* v. *Allan* (1979) 80 N.J. 421 [404 A.2d 8]) and a demurrer should not be sustained without leave to amend if there is a reasonable possibility that a defect in the complaint can be cured by amendment. (*Minsky* v. *Los Angeles* (1974) 11 Cal.3d 113 [113 Cal.Rptr. 102, 520 P.2d 726].)

Plaintiff alleges that the statute did not begin to run until March 9, 1979, when plaintiff's parents retained counsel, alleging that it was at this time the plaintiff's parents first discovered the existence of a cause of action. Although plaintiff's allegations must be taken as true for purposes of demurrer, if it appears on the face of the complaint that plaintiff should have discovered the alleged negligence at an earlier time such that the statute would not be tolled, plaintiff's cause of action would be barred by the running of the statute of limitations.

Where plaintiff is a minor, it is not the knowledge or lack thereof of the minor, but the knowledge or lack thereof of the minor's parents which determines the time of the accrual of the cause of action. (*Segura* v. *Brundage* (1979) 91 Cal.App.3d 19 [153 Cal.Rptr. 777]; *Whitfield* v. *Roth* (1974) 10 Cal.3d 874 [112 Cal.Rptr. 540, 519 P.2d 588].) When plaintiff has notice or information of circumstances to put a reasonable person on inquiry or has the opportunity to obtain knowl-

edge from sources open to his investigation, the statute begins to run. (*Sanchez* v. *South Hoover Hospital* (1976) 18 Cal.3d 93, 101 [132 Cal. Rptr. 657, 553 P.2d 1129].) The statute of limitations in Civil Code section 29 for prenatal malpractice is subject to being tolled where the parents' failed to discover, and in the exercise of due diligence should not have discovered, the negligent cause of the injury. Thus, the suit is not barred if parents can show delayed discovery, because the statute in a medical malpractice case runs from the discovery date, or from the date when, in the exercise of reasonable diligence, the plaintiff should have discovered the wrongful act (*Segura* v. *Brundage* (1979) 91 Cal. App.3d 219 [153 Cal.Rptr. 777].) When there is a belated discovery the issue of whether plaintiff exercised reasonable diligence is a question of fact (*Wozniak* v. *Peninsula Hospital* (1969) 1 Cal.App.3d 716 [82 Cal.Rptr. 84]) and where there is a professional relationship, the degree of diligence in ferreting out the negligence for the purpose of the statute of limitations is diminished. (*Enfield* v. *Hunt* (1979) 91 Cal. App.3d 417 [154 Cal.Rptr. 146].)

Therefore, unless the complaint herein shows on its face that, in the exercise of due diligence, plaintiff's parents should have discovered the doctor's alleged negligence, and plaintiff's parents failed to do so, the issue of whether or not they should have realized earlier that their doctor could have detected Down's Syndrome by performing amniocentesis, is a question of fact and the demurrer should not have been granted.

Respondent argues that, as a matter of law, the parents should have realized in the exercise of due diligence that they had a cause of action at the time the Down's Syndrome was detected. He argues that Down's Syndrome is detectable and diagnosable at birth, and as such, any possible negligence in failing to perform amniocentesis and in failing to warn plaintiff's parents of the condition either was apparent at birth, or plaintiff's parents in the exercise of reasonable diligence should have been put on notice at the time of birth. Respondent argues that the statute of limitations should not have been tolled and that plaintiff's parents, in the exercise of reasonable diligence, should have investigated the situation prior to the time they consulted an attorney, since Down's Syndrome is apparent at birth.

Respondent analogizes to the case of *McGee* v. *Weinberg* (1979) 97 Cal.App.3d 798 [159 Cal.Rptr 86], where a former wife sued her attorney for malpractice, alleging that the attorney failed to provide that her

former husband make her an irrevocable beneficiary on his life insurance policy.

The *McGee* court held that it was the knowledge of the facts, rather than the discovery of the legal theory, that was the test of whether the statute of limitations was tolled, and that the plaintiff's former wife in the *McGee* case had knowledge of the facts giving rise to the malpractice action, when she failed to receive any insurance proceeds after her former husband's death. Respondent argues that it is the facts that trigger the operations of the statute, and belief that there is a legal cause of action, or discovery of a legal theory, is immaterial. (*McGee* v. *Weinberg* (1979) 97 Cal.App.3d 798 [159 Cal.Rptr. 86].) Stating the matter another way, respondent argues that it is facts and events which inform a person that something is wrong and should be looked into, and it is the occurrence of some such cognizable event rather than knowledge of its legal significance that starts the running of the statute of limitations. (*McGee* v. *Weinberg, supra,* at p. 804.)

Respondent correctly states the law of when the statute of limitations begins to run, but that rule does not aid him in his position.

Respondent in the instant case argues that plaintiff's parents herein also had knowledge of the facts (that the baby Elizabeth was born with Down's Syndrome baby, and the fact that the parents herein had no knowledge of the theory (that defendant doctor should have ordered amniocentesis and advised the mother to get an abortion) was not controlling.

We do not think the analogy to *McGee* is persuasive. In *McGee* the former wife knew she did not receive money at her husband's death, but she also knew the damage was caused by the negligence of the lawyer (p. 804), even though she did not know that she had a legal cause of action, and she did not know an applicable legal theory. (*McGee* v. *Weinberg, supra,* 97 Cal.App.3d at p. 804.) The parents in the instant case did know the baby was born with Down's Syndrome, but the parents did not know the Down's Syndrome could have been predicted if her doctor had performed amniocentesis. Thus, in the case at bar, the mother knew merely that she gave birth to a Down's Syndrome baby, but she did not have before her the additional and critical fact that the condition could have been predicted by amniocentesis. Merely knowing that the mother gave birth to a Down's Syndrome baby would not be a sufficient fact or event to put a reasonable person on notice that the

condition was predictable by a test called amniocentesis. While that medical test may be well known to a small sophisticated and educated portion of the nonmedical population, we can not say that a reasonable person not trained in medicine should have known that amniocentesis testing could have revealed the abnormality prior to birth. Thus, in the *McGee* case the plaintiff had knowledge of the important and critical facts that should have put her on notice that she had a cause of action. In the instant case, the only fact the parents had before them was they had a Down's Syndrome baby. We cannot say as a matter of law that they, as reasonable persons, should have realized they had a cause of action. Whether or not the statute should have been tolled was a question of fact.

Several cases are consistent with our position that the statute of limitations did not begin to run merely because the parents had knowledge that the mother gave birth to a Down's Syndrome baby.

In *Warrington* v. *Charles Pfizer & Co.* (1969) 274 Cal.App.2d 564 [80 Cal.Rptr. 130], the statute of limitations for personal injuries allegedly suffered by ingestion of a drug did not begin to run until after the connection between the drug and the illness had been suggested to plaintiff by her attorney, where plaintiff therein had the right to rely on defendant's representation and was lulled into a false sense of security by it. The *Warrington* court said where an intelligent person cannot, *without specialized knowledge,* have been made aware of the cause of action, no cause of action begins to accrue until the person knew or should have known of the alleged negligence.

In the case at bench, an intelligent person would not necessarily know the birth of a Down's Syndrome child could be predicted by performing amniocentesis, without specialized knowledge about that particular medical test. Thus, the statute of limitations would not begin to run until they had such specialized knowledge.

In *Whitfield* v. *Roth* (1974) 10 Cal.3d 874 [112 Cal.Rptr. 540, 519 P.2d 588] plaintiff was a minor and suffered a stroke and the parents sued after the 100-day statutory limit. The court cited *Wozniak v. Peninsula Hospital* (1969) 1 Cal.App.3d 716 [82 Cal.Rptr. 84], stating that while the parents in *Wozniak* were aware of the child's abnormal physical and mental condition they had no specific information that the condition was due either to the operation itself or the lack of hospital care. Similarly, in the case at bench, although the Calls had knowledge

that their child was born with Down's Syndrome and therefore knew of the abnormal physical and mental condition, the parents did not have specific information that amniocentesis should be performed on older pregnant women, and that the test would have revealed the fetus was affected with Down's Syndrome.

Also, in *Whitfield* v. *Roth* (1974) 10 Cal.3d 874, 888 [112 Cal.Rptr. 540, 519 P.2d 588] plaintiff was aware that something was wrong but not aware of the negligent cause, and the court said we must decide whether it can be said as a matter of law that the plaintiff, Mrs. Chandler, should have discovered the negligent cause.

In the case at bench, whether the Call parents should have realized Elizabeth's condition could have been predicted by amniocentesis is a question of fact. The reasonableness of a delayed discovery may be a question of law when allegations of the complaint bearing on whether the plaintiffs had constructive notice of allegedly undiscovered facts are susceptible to only one legitimate inference. (*Saliter* v. *Pierce Brothers Mortuaries* (1978) 81 Cal.App.3d 292, 300 [146 Cal.Rptr. 271].) Such is not the case here. The critical question is the determination of the time in which the statute of limitations began to run, and this is a question of law when all of the facts to answer the question are alleged within or on the face of the complaint. (*McGee* v. *Weinberg* (1979) *supra*, 97 Cal.App.3d 798, 802.)

In the case at bar, whether or not the parents should have been on notice that the doctor improperly failed to perform amniocentesis does not appear on the face of the complaint, and when they should have been put on inquiry is a question of fact. Therefore the demurrer should not have been granted on the basis of the statute of limitations had run.

The judgment (order of dismissal) is reversed with directions to allow plaintiff, if so advised, to amend the complaint in accordance with this opinion.

McClosky, J., and Mayerson, J.,* concurred.

A petition for a rehearing was denied September 3, 1982, and respondent's petition for a hearing by the Supreme Court was denied October 28, 1982. Richardson, J., was of the opinion that the petition should be granted.

---

*Assigned by the Chairperson of the Judicial Council.