[No. A021931. First Dist., Div. One. Aug. 22, 1985.]

GEORGIANN KENSINGER, Plaintiff and Appellant, v.
ABBOTT LABORATORIES et al., Defendants and Respondents.

COUNSEL

Hersh & Hersh, Harry A. Allen, LeRoy Hersh and Dan Bolton for Plaintiff and Appellant.

Haight, Dickson, Brown & Bonesteel, Robert L. Dickson, Ralph A. Campillo, Roxanne M. Wilson, Robert L. Kaufman, Joseph R. Zamora, Sedgwick, Detert, Moran & Arnold, Kevin J. Dunne, Michael F. Healy, Bruce A. Edwards, Frederick D. Baker, Harold J. Decker, John D. O'Connor, Patrick J. Hogan, Tarkington, Carey, O'Connor & O'Neill, Tarkington, O'Connor & O'Neill, Adams, Duque & Hazeltine, Richard T. Davis, Jr., Robert D. Phillips, Jr., Robert H. Roe, Richard J. Heafey, Peter W. Davis, James C. Martin, Crosby, Heafey, Roach & May, Richard J. Siggins, William S. Ginsburg, Gudmundson, Siggins & Stone and Gudmundson Siggins, Stone & Skinner for Defendants and Respondents.

OPINION

NEWSOM, J.—Appellant filed a complaint for damages against numerous pharmaceutical companies, some of which are respondents herein, on November 25, 1980, alleging the following causes of action: negligence; strict

products liability; breach of implied warranty; breach of express warranty; and fraud. The complaint alleges that respondents manufactured, distributed and sold diethylstilbestrol, a synthetic estrogen popularly known as DES, a substance to which she was exposed *in utero* in late 1958 and early 1959, causing her to contract clear cell adenocarcinoma of the vagina and cervix many years later.

After undertaking extensive discovery, respondent Eli Lilly & Company (hereafter Lilly) filed a motion for summary judgment on the ground that appellant's action was barred by the applicable statute of limitations (Code Civ. Proc., § 340, subd. (3)). The remaining respondents joined in Lilly's motion, and moved for summary judgment on the additional ground that they did not manufacture or market the product which caused appellant's injuries.

After a full hearing on the motions, in the course of which deposition testimony and declarations were received as evidence, the trial court ruled that the statute of limitations had run on appellant's claim. Judgment was entered accordingly in favor of respondents, and this appeal followed. We summarize the pertinent factual background as follows.

While pregnant with appellant in 1958 and early 1959, appellant's mother ingested DES, a drug customarily prescribed at that time to prevent miscarriages and other accidents of birth. According to the declaration of Richard R. Deardorff, the pharmacist who dispensed the drug in question, his records indicate that Lilly was the manufacturer of the DES given to appellant's mother. Appellant was born on January 13, 1959, apparently after being exposed to the drug *in utero*.

Later, the efficacy of DES was questioned and a statistical association between prenatal exposure to DES and adenocarcinoma was discovered. After 1971, DES was no longer marketed as a drug to prevent pregnancy complications.

In August of 1974, after she was diagnosed as suffering from clear cell adenocarcinoma of the vagina and cervix, appellant underwent surgery and a radium implant was placed in her vagina.

At the time of her surgery and treatment in 1974, appellant was told by her doctors that the cancer was caused by her mother's ingestion of DES during pregnancy. She believed then that DES was a "bad product." In her declaration, appellant expressed the conclusion, reached in 1977, that "the cause of my cancer and all the things that flowed therefrom, were as a result of the fact that my mother had taken this drug during the time she was pregnant with me."

In 1977, when appellant reached the age of majority, she felt that the discomfort she experienced during sexual relations and her inability to have children, was also "caused by DES and the cancer and the resulting surgery." By this time, appellant also learned by overhearing a conversation between her parents that Lilly was the probable manufacturer of the DES taken by her mother. In 1977, appellant's father was advised by a lawyer that his daughter could not successfully bring suit for her injuries.

In 1980, appellant was alerted to newspaper clippings which mentioned the right of DES victims to sue without identifying the particular manufacturer of the drug causing their injuries. She thereafter consulted an attorney and the instant action was filed on November 25, 1980.

■ The sole issue on appeal is whether the trial court erred in finding appellant's action barred by the statute of limitations prescribed by Code of Civil Procedure section 340, subdivision (3). Appellant contends that respondents have not established a statute of limitations defense as a matter of law, and that summary judgment was thus improperly granted.

Section 340, subdivision (3) provides that suits seeking damages for personal injuries must be filed within one year.[1] ■ Generally, a personal injury claim accrues and the period of limitations commences upon the occurrence of the last essential element of the cause of action. (*Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 187 [98 Cal.Rptr. 837, 491 P.2d 421]; *Leaf* v. *City of San Mateo* (1980) 104 Cal.App.3d 398, 406 [163 Cal.Rptr. 711].) ■ A plaintiff's ignorance of the cause of action or the identity of the wrongdoer does not normally toll the statute of limitations. (*Howe* v. *Pioneer Mfg. Co.* (1968) 262 Cal.App.2d 330, 340 [68 Cal.Rptr. 617].)

Accrual of the cause of action is delayed, however, where the pathological effect occurs "without perceptible trauma" and the victim is " 'blamelessly ignorant' " of the cause of injury. (*G. D. Searle & Co.* v. *Superior Court* (1975) 49 Cal.App.3d 22, 25 [122 Cal.Rptr. 218]; see also *Frederick* v. *Calbio Pharmaceuticals* (1979) 89 Cal.App.3d 49, 58 [152 Cal.Rptr. 292].) In such a case, under the "rule of discovery" the period of limitations

---

[1]Section 340, subdivision (3) provides: "Within one year . . . (3) An action for libel, slander, assault, battery, false imprisonment, seduction of a person below the age of legal consent, or for injury to or for the death of one caused by the wrongful act or neglect of another, or by a depositor against a bank for the payment of a forged or raised check, or a check that bears a forged or unauthorized endorsement, or against any person who boards or feeds an animal or who engages in the practice of veterinary medicine as defined in Section 4826 of the Business and Professions Code, for such person's neglect resulting in injury or death to an animal or fowl in the course of boarding or feeding such animal or fowl or in the course of the practice of veterinary medicine on such animal or fowl."

begins to run only when the plaintiff has discovered, or using reasonable diligence, should have discovered the injury and its cause. (*Leaf* v. *City of San Mateo, supra,* 104 Cal.App.3d 398, 407; *G. D. Searle, supra,* at p. 25; *Warrington* v. *Charles Pfizer & Co.* (1969) 274 Cal.App.2d 564, 569-570 [80 Cal.Rptr. 130].)

■ The "rule of discovery" governs the present case, as the parties seem to agree. (*Pereira* v. *Dow Chemical Co.* (1982) 129 Cal.App.3d 865, 873 [181 Cal.Rptr. 364]; *G. D. Searle & Co.* v. *Superior Court, supra,* 49 Cal.App.3d 22, 25.) The dispute centers upon the accrual date under this test.

Appellant claims that the period of limitations did not commence until 1980, following our high court's decision in *Sindell,* when she learned of her right to bring suit without identifying the responsible drug manufacturer. Appellant also argues she was not aware of the asserted tortious conduct of respondents—failure to adequately test the effects of DES upon the offspring of those subjects to whom the drug was administered, and failure to warn of the known risks of DES—until at least 1980.

Respondents argue that appellant had notice of her injuries and their negligent cause by the time she reached the age of majority on January 13, 1977 (Civ. Code, § 25). She therefore had only one year from that date to file her complaint (Code Civ. Proc., §§ 340, subd. (3); 352, subd. (a)(1)), and her suit, filed November 25, 1980, was hence untimely.

■ The issue comes before us in the limited context of an appeal from a summary judgment in favor of respondents; our single task is to determine whether a triable issue of material fact remains to be adjudicated. (*Miller* v. *Bechtel Corp.* (1983) 33 Cal.3d 868, 874 [191 Cal.Rptr. 619, 663 P.2d 177].) ■ " ' "The summary judgment procedure is drastic and should be used with caution so that it does not become a substitute for an open trial . . . ." ' " (*Pereira* v. *Dow Chemical Co., supra,* 129 Cal.App.3d 865, 872.) ■ We are cognizant, too, of the rule that "[s]tatutorily imposed limitations on actions are technical defenses which should be strictly construed to avoid the forfeiture of plaintiff's rights. . . . Any doubt as to whether summary disposition is proper must be resolved against the moving parties" (*Sevilla* v. *Stearns-Roger, Inc.* (1980) 101 Cal.App.3d 608, 611 [161 Cal.Rptr. 700])—a rule which gains considerable strength from the combination here of appellant's profound injury and her blamelessness in lack of knowledge of its causation.

Nevertheless, if a statute of limitations defense is established as a matter of law, summary judgment is proper. (*Burgon* v. *Kaiser Foundation Hos-*

*pitals* (1979) 93 Cal.App.3d 813, 822-823 [155 Cal.Rptr. 763].) As declared in *Wells Fargo Bank* v. *Superior Court* (1977) 74 Cal.App.3d 890, 895 [141 Cal.Rptr. 836]: "[w]hen there is no dispute over the decisive facts, the question of limitations is one of law, amenable to disposition by summary judgment."

■ According to the "rule of discovery," we must measure the period of limitations from the date appellant was first aware of both the harm she suffered and its wrongful cause. (*Brown* v. *Bleiberg* (1982) 32 Cal.3d 426, 433 [186 Cal.Rptr. 228, 651 P.2d 815]; *Hills* v. *Aronsohn* (1984) 152 Cal.App.3d 753, 759 [199 Cal.Rptr. 816].) But "[p]ossession of 'presumptive' as well as 'actual' knowledge will commence the running of the statute." (*Sanchez* v. *South Hoover Hospital* (1976) 18 Cal.3d 93, 101 [132 Cal.Rptr. 657, 553 P.2d 1129].) " '[W]hen the plaintiff has notice or information of circumstances to put a reasonable person *on inquiry,* or *has the opportunity to obtain knowledge* from sources open to his investigation . . . the statute commences to run.' " (*Ibid.,* italics in original; see also *Call* v. *Kezirian* (1982) 135 Cal.App.3d 189, 195 [185 Cal.Rptr. 103]; *McGee* v. *Weinberg* (1979) 97 Cal.App.3d 798, 803 [159 Cal.Rptr. 86].) The " 'means of knowledge are equivalent to knowledge.' " (*Graham* v. *Hansen* (1982) 128 Cal.App.3d 965, 973 [180 Cal.Rptr. 604]; *McGee, supra,* at p. 803; *Gray* v. *Reeves* (1977) 76 Cal.App.3d 567, 576 [142 Cal.Rptr. 716].)

■ The question of whether plaintiff's discovery of the cause of action has been reasonably delayed is usually one of fact; it is only where reasonable minds can draw but one conclusion from the evidence that it becomes one of law. (*McCann* v. *Welden* (1984) 153 Cal.App.3d 814, 824 [200 Cal.Rptr. 703]; *Baright* v. *Willis* (1984) 151 Cal.App.3d 303, 311 [198 Cal.Rptr. 510]; *Pereira* v. *Dow Chemical Co., supra,* 129 Cal.App.3d 865, 874.)

■ By 1974, based upon medical advice, appellant was aware of a possible causal relationship between DES and clear cell adenocarcinoma of the vagina and cervix. She believed that DES was in some way responsible for her cancer and all her resulting injuries. And when she reached the age of majority in 1977, she was convinced that the pain she experienced during intercourse as well as her inability to have children were caused by DES. In addition, she had once heard information which tended to show that Lilly may have manufactured the DES administered to her mother, although this fact was arguably far from conclusively established in her mind.

■ We acknowledge the established rule in California that the statute of limitations is "not tolled by belated discovery of legal theories, as distin-

guished from belated discovery of *facts.*" (*Baright* v. *Willis, supra,* 151 Cal.App.3d 303, 311; *McGee* v. *Weinberg, supra,* 97 Cal.App.3d 798, 803.) It is the occurrence of a cognizable event rather than knowledge of its legal significance that starts the running of the statute of limitations. (*Graham* v. *Hansen, supra,* 128 Cal.App.3d 965, 974; *McGee, supra,* at p. 804.) "[C]ontemporaneous ignorance of a legal theory of recovery avails plaintiff nothing." (*Graham, supra.*)

The distinction between operative facts and legal theories, however, is not always easy to draw. In the context of drug product liability cases, a plaintiff may be aware of an injury and its cause, while possessing no knowledge of facts indicating wrongdoing by a particular defendant. In such a situation, litigation might be premature for lack of knowledge of any factual basis for imputing fault to a manufacturer rather than ignorance of supportive legal theories.

Thus, in *Call* v. *Kezirian, supra,* 135 Cal.App.3d 189, plaintiff's parents knew at their child's birth that she was afflicted with Down's Syndrome, but did not attribute the condition to defendant's negligence—failure to perform an amniocentesis—until much later. The court there held that defendant had failed to conclusively establish that the event of the child's birth should reasonably have triggered the limitations period by putting the parents on notice of defendant's negligence. Whether the parents should have realized that the child's condition resulted from defendant's negligence was characterized as a "question of fact," not amenable to resolution on demurrer. (*Id.,* at p. 199.)

The rule seems to us a sound one. Knowledge of the occurrence and origin of harm cannot necessarily be equated with knowledge of the factual basis for a legal remedy. Plaintiff may be aware of the former but ignorant of the latter, in which case we can discern no reason in fairness or logic to bar the suit. ■■■ The purpose of statutes of limitations is to prevent assertion of claims which have become stale due to plaintiff's neglect or inattentiveness. (*Davies* v. *Krasna* (1975) 14 Cal.3d 502, 512-514 [121 Cal.Rptr. 705, 535 P.2d 1161, 79 A.L.R.3d 807].) Where the plaintiff is unaware that her legal rights have been infringed, however, it would be palpably unjust to declare a cause of action untimely. ■■■ Here, as in *Call, supra,* appellant claims not to have been cognizant that there existed a factual basis for a cause of action—predicated upon Lilly's *fault* and the causative connection between it and her cancer—until long after she had become aware of the harm she had suffered and its origins. Whether her ignorance under all the attendant circumstances was reasonable is ultimately a question of fact.

We perceive in the recent case law on the subject of drug product liability torts an emerging trend to commence the period of limitations only when a

plaintiff knows or should have known of some *wrongdoing* by a drug manufacturer. (*Goodman* v. *Mead Johnson & Co.* (3d Cir. 1976) 534 F.2d 566, cert. den. (1977) 429 U.S. 1038 [50 L.Ed.2d 748, 97 S.Ct. 732]; *Schenebeck* v. *Sterling Drug, Inc.* (8th Cir. 1970) 423 F.2d 919; *Dawson* v. *Eli Lilly & Co.* (D.C. Cir. 1982) 543 F.Supp. 1330; *Anthony* v. *Abbott Laboratories* (R.I. 1985) 490 A.2d 43; *Raymond* v. *Eli Lilly & Co.* (1977) 117 N.H. 164 [371 A.2d 170].)

One such case, *Anthony* v. *Abbott Laboratories, supra,* 490 A.2d 43, although from another jurisdiction, we find particularly persuasive. There, 12 women brought suit against drug manufacturers for physical injuries allegedly caused by exposure to DES. As in the case at bench, plaintiffs suspected that their injuries were attributable to DES long before they became aware of any actionable conduct by the defendants. (*Id.,* 490 A.2d at p. 44.) ▮▮▮ The court concluded: "We are convinced, after reviewing the case law and weighing the equitable considerations, that the better view would be to adopt the following rule: in a drug product-liability action where the manifestation of an injury, the cause of that injury, and the person's knowledge of the wrongdoing by the manufacturer occur at different points in time, the running of the statute of limitations would begin when the person discovers, or with reasonable diligence should have discovered, the wrongful conduct of the manufacturer." (490 A.2d at p. 46.)

We agree with the reasoning of *Anthony,* and adopt it here, particularly in light of the recent decision in *Sindell* v. *Abbott Laboratories* (1980) 26 Cal.3d 588 [163 Cal.Rptr. 132, 607 P.2d 924, 2 A.L.R. 4th 1061], where our high court, noting the greater ability of drug manufacturers and distributors to both bear the cost of injuries and discover and guard against defects in their products (*id.,* at pp. 611-612), shifted the burden of negating and apportioning damages in DES cases to defendants. The court declared: "Each defendant will be liable for the proportion of the judgment represented by its share of the market unless it demonstrates that it could not have made the product which caused plaintiff's injuries." (*Id.,* at p. 612.)[2]

Moreover, delaying the accrual date in DES cases until the plaintiff discovers or with reasonable diligence should have discovered the manufacturer's wrongdoing will encourage drug purveyors not only to engage in more thorough testing of similar products, but also to publicize their harmful effects in order to better inform the public of known risks associated with

---

[2]We emphasize that while we do not regard the period of limitations in the present case as inoperative before *Sindell* was decided in March of 1980, nonetheless *Sindell* is a strong policy statement by our high court that procedural obstacles to DES cases should be minimized in light of the seriousness of the harm and the complex problems of proof encountered by plaintiffs. (*Id.,* at p. 611.)

the drug. (*Anthony* v. *Abbott Laboratories, supra,* 490 A.2d 43, 48.) And we are of course aware that drug manufacturers are in a better position to avoid loss of evidence, and less likely to suffer prejudice from faded memories, misplaced records or unavailable witnesses.[3] (*Id.,* at pp. 47-48; see also *Sindell* v. *Abbott Laboratories, supra,* 2 Cal.3d 588, 601.) This is so, in our view, even in the aftermath of *Sindell;* plaintiffs still bear the burden of proving an actionable wrong by defendants.

Respondents insist that delaying accrual of the period of limitations until a plaintiff has knowledge of wrongful conduct by the drug manufacturer will effectively negate the limitations law by permitting those who are aware that a particular harm has occurred to passively await further information while claims become stale. The standard we have adopted, however, remains an objective one: the limitations period in DES cases is not triggered until such time as a plaintiff becomes or should have become aware of all the elements of the cause of action. Reasonable diligence in discovering wrongful conduct on the part of the drug manufacturer continues to be required, and whether it was exercised remains a question for the trier of fact. (*Anthony* v. *Abbott Laboratories, supra,* 490 A.2d 43, 49.) Summarizing, we conclude that in actions for injuries allegedly incurred as a result of exposure to DES, the one-year period of limitations stated in Code of Civil Procedure section 340, subdivision (3) begins to run only when the plaintiff discovers or with reasonable diligence should have discovered the drug manufacturer's wrongful conduct.

■ Here, while appellant apparently knew that DES was responsible for her injuries by the time she reached her majority in 1977, she claims ignorance of any wrongful conduct by respondents before 1980. Since the record fails to show facts demonstrating *as a matter of law* that appellant should have been aware of a factual basis for her suit against Lilly more than one year before the complaint was filed, we conclude that the trial court erred in granting respondents' motion for summary judgment on grounds the action was time-barred.

---

[3]In *Anthony, supra,* at page 47, the court explained: "We do not believe that the prejudice to defendant drug companies is significant in this case. It should be foreseeable to the drug companies that if they put a product on the market that has harmful consequences, its effects will take some time to manifest themselves. They should also be aware that there may be an additional period of time before the injured person learns that her injury was the result of wrongful conduct on the part of the manufacturer. See *Raymond* v. *Eli Lilly & Co.,* 117 N.H. at 174, 371 A.2d at 176 . . . . Most of the evidence necessary to prove or defend against liability is likely to be documentary in nature. It is not the kind of evidence that is lost or becomes unreliable as time passes. Companies generally compile and maintain research records that document the extent of their knowledge of the harmful propensities of their drugs."

The judgment is reversed and remanded to the trial court for proceedings not inconsistent with the views expressed herein.[4]

Racanelli, P. J., and Elkington, J., concurred.

Petitions for a rehearing were denied September 18, 1985, and the opinion was modified to read as printed above. Respondents' petitions for review by the Supreme Court were denied December 9, 1985. Lucas, J., was of the opinion that the petitions should be granted.

---

[4]We express no opinion on the remaining grounds asserted by respondents in support of their motions for summary judgment, leaving that determination to the trial court upon remand. And in light of our conclusion, we find it unnecessary to discuss the remaining contentions of appellant.