Anna Lee ANDERSON, Plaintiff
and Appellant,

v.

DEAN WITTER REYNOLDS, INC.;
Ralph Pahnke; and John Does I
through XXV, Defendants and Appellees.

No. 940488–CA.

Court of Appeals of Utah.

July 11, 1996.

Rehearing Denied Aug. 2, 1996.

James E. Morton, Bugden, Collins & Morton, Salt Lake City, for Appellant.

Joseph J. Palmer, Reid E. Lewis, Moyle & Draper, P.C., Salt Lake City, for Appellees.

Before ORME, P.J., and GREENWOOD and WILKINS, JJ.

## OPINION

ORME, Presiding Judge:

Relying on the discovery rule, plaintiff appeals the trial court's grant of summary judgment dismissing her action on statute of limitations grounds. We conclude plaintiff did not meet her inquiry-notice duty with reasonable diligence and affirm.

## FACTS

In 1978, the Norman Anderson Trust Agreement was executed by Norman Anderson, the now-deceased husband of plaintiff Anna Anderson. James Anderson, their son, was named trustee. Plaintiff kept in her possession a copy of the trust agree-

ment. The primary trust asset was Levi Strauss stock worth approximately two million dollars.

Following the creation of the trust, a stock trading account was established for the trust at Dean Witter Reynolds, Inc., in Salt Lake City. Ralph Pahnke was the Dean Witter stockbroker responsible for the account. The trust agreement did not authorize speculative transactions, such as margin, short, option, or commodity transactions. Dean Witter's Operations Service Center in San Francisco approved the account for cash business only, which meant that, as a matter of internal regulation, margin transactions would not be permitted.

The Norman Anderson Trust provided that upon the death of Norman Anderson, which occurred in March 1979, the assets in the trust would be distributed into two subordinate trusts, the Norman Anderson Family Trust and the Norman Anderson Marital Trust. Plaintiff became the beneficiary of the marital trust. James remained the trustee of both of the newly created trusts with the same powers he had under the original trust. As with the original trust, the agreement creating the new trusts did not authorize margin trading. In the spring of 1980, despite the direction in the trust agreement, James directed the transfer of the Levi stock from the Norman Anderson Trust not into the accounts established for the subordinate trusts, but rather into accounts at Dean Witter that permitted margin transactions. These transfers were accomplished by a hand-written letter of instruction prepared by Pahnke and signed by James. Plaintiff did not see the letter authorizing this transfer until 1990.

Over the next four years, James borrowed against the stock in the margin accounts, fully depleting them by 1984. Plaintiff was aware, although James was not employed, that he purchased a $500,000 home and BMW and Mercedes automobiles. In 1984, James informed plaintiff that the funds left for her in trust had been lost due to "market conditions" and a "market crash." Plaintiff did not actually know the funds had been transferred out of the Norman Anderson Trust and margined until an arbitration was commenced in 1990. However, under the terms of the trust agreement, she was entitled to request from her son, the trustee, an annual accounting "of income and principal, including a statement of all receipts, disbursements and capital changes" involving trust funds.

Plaintiff, by her own admission, understood at all times relevant hereto that the assets in the Norman Anderson Trust were her "nest egg" and "not to be touched." She testified in her deposition that she did not believe her son had the power to "monkey with" the stock. Although plaintiff claimed that when James told her of the loss of the stock in 1984 she was in a state of shock, she did not consult an attorney or any other professional to determine her rights until 1990. Nor did she require more explanation of her son, demand records documenting the loss due to "market conditions," or require an accounting. While plaintiff claimed she definitely cared that the stock had been lost, she conceded that asking about the details of the transactions was something she should have been "better at."

In December 1990, plaintiff and James went to arbitration against Dean Witter, alleging Dean Witter and Ralph Pahnke mismanaged the Andersons' accounts causing a loss in excess of three million dollars. At that time, the arbitrators indicated that plaintiff, as a beneficiary, would have to pursue her claim in a separate lawsuit. Plaintiff then filed this suit in early December of 1990. The trial court dismissed the complaint upon defendant's Rule 12(b)(6) motion, concluding plaintiff lacked standing. This court reversed the trial court's dismissal, holding that plaintiff, as the beneficiary of the subject trust, had standing to bring the action. *Anderson v. Dean Witter Reynolds, Inc.*, 841 P.2d 742 (Utah App.1992), *cert. denied*, 853 P.2d 897 (Utah 1993). Following remand, cross-motions for summary judgment were filed and the trial court granted defendant's motion based, inter alia, upon the statute of limitations. Plaintiff now appeals that dismissal.

### STANDARD OF REVIEW

■ Summary judgment is only proper when no genuine issue of material fact ex-

ists, and the moving party is entitled to judgment as a matter of law. Utah R.Civ.P. 56(c); *Winegar v. Froerer Corp.,* 813 P.2d 104, 107 (Utah 1991). Because a challenge to summary judgment requires only review of questions of law, we accord no particular deference to the trial court's conclusions but review them for correctness. *Schurtz v. BMW of N. Am.,* 814 P.2d 1108, 1111–12 (Utah 1991).

## STATUTE OF LIMITATIONS AND THE DISCOVERY RULE

■ Dean Witter contends that plaintiff's causes of action—for breach of contract, tortious interference with contract, negligence, and breach of fiduciary duty—are time-barred under Utah Code Ann. § 78–12–25(1), (3) (1992). Under these provisions, which all parties agree are the statutes of limitation applicable to this case, actions upon contracts that are not in writing or for services rendered and all other actions for relief, not otherwise provided for by law, must be commenced within four years. Dean Witter argues that plaintiff had four years from the date she was told her stock was lost in 1984 to bring the present suit and, because she waited until 1990, she is barred from pursuing her claims. Plaintiff counters that Dean Witter concealed certain facts she needed in order to realize that she had a cause of action against them until the discovery of the handwritten letter, which neither she nor her accountants or attorneys saw until 1990. She claims the discovery rule applies and gives her four years from the time she first saw the letter to bring her suit, making her action timely since it was commenced immediately after she saw the letter.

■ Statutes of limitation "are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared."[1] *Becton Dickinson & Co. v. Reese,* 668 P.2d 1254, 1257 (Utah 1983).

Generally, a cause of action accrues and the relevant statute of limitations begins to run when the last event that will complete the cause of action occurs, and simple ignorance of or obliviousness to the existence of a cause of action will not prevent the running of the statute of limitations. *Walker Drug Co. v. La Sal Oil Co.,* 902 P.2d 1229, 1231 (Utah 1995).

■ However, in certain circumstances the discovery rule operates to extend the time from which the limitations period begins to run. *Id.* If the discovery rule applies, the applicable statute of limitations is held to have commenced running only at the time the plaintiff first knew or should have known the facts giving rise to the cause of action. *Id. Accord United Park City Mines Co. v. Greater Park City Co.,* 870 P.2d 880, 889 (Utah 1993) (statute of limitations for fraud begins to run when one entitled to property knows, or by reasonable diligence and inquiry should have known, the facts relevant to the fraud). There are three situations in which the discovery rule applies:

(1) in situations where the discovery rule is mandated by statute; (2) in situations where a plaintiff does not become aware of the cause of action because of the defendant's concealment or misleading conduct; and (3) in situations where the case presents exceptional circumstances and the application of the general rule would be irrational or unjust, regardless of any showing that the defendant has prevented the discovery of the cause of action.

*Walker Drug,* 902 P.2d at 1231. Plaintiff claims the start of the limitations period in this action was postponed by the concealment prong of the discovery rule. If she is right, there is no question but that she is entitled to reversal of the adverse summary judgment on the authority of *Berenda v. Langford,* 914 P.2d 45 (Utah 1996), provided only that she "make[s] a prima facie showing of fraudulent concealment *and then demonstrat[es] that given the defendant's actions, a*

---

**1.** Such purposes are of more than theoretical concern in this case. Dean Witter no longer has the working documents of the transfer transaction. The files of the accountant who prepared the tax returns for the trust in 1979 have been destroyed. Although James consulted an attorney regarding the asset transfer, the attorney now has no recollection of the specifics of the legal work he performed.

*reasonable plaintiff would not have discovered the claim earlier."* *Id.* at 51 (emphasis added).

▮▮▮ Under the concealment prong, a defendant who misleads the plaintiff is, in essence, estopped from asserting the statute of limitations as a defense to the claim. *Warren v. Provo City Corp.,* 838 P.2d 1125, 1129–30 (Utah 1992). The limitations period is postponed only by belated discovery of key facts and not by delayed discovery of legal theories. *McGee v. Weinberg,* 97 Cal.App.3d 798, 159 Cal.Rptr. 86, 89 (1979); *Young v. Datsopoulos,* 249 Mont. 466, 817 P.2d 225, 227 (1991). *See also Myers v. McDonald,* 635 P.2d 84, 86 (Utah 1981) (running of limitations period does not begin until discovery of facts forming basis of cause of action).

There are two concepts that must be considered in determining whether this plaintiff should have earlier discovered the facts forming the basis of her cause of action. The first is inquiry notice; the second is reasonable diligence: Was plaintiff on notice that she might have a cause of action for the loss of her funds and, if so, was she reasonably diligent in investigating the facts surrounding her loss?

▮▮▮ As to inquiry notice, "the test is whether the plaintiff has information of circumstances sufficient to put a reasonable person on inquiry." *McGee,* 159 Cal.Rptr. at 90. *See Merkley v. Beaslin,* 778 P.2d 16, 19 (Utah App.1989).

> "Where the circumstances are such as to suggest to a person of ordinary intelligence the probability that he has been defrauded, the duty of inquiry arises, and if he omits that inquiry when it would have developed the truth, and shuts his eyes to the facts which call for investigation, knowledge of the fraud will be imputed to him."

*United Park City Mines Co. v. Greater Park City Co.,* 870 P.2d 880, 888 (Utah 1993) (quoting *Higgins v. Crouse,* 147 N.Y. 411, 416, 42

N.E. 6 (1895)). Here, as of 1984 plaintiff knew her stock had been lost—James told her as much. ·A reasonable person, upon learning he or she had lost over a million dollars worth of stock thought to be "untouchable," would certainly have inquired about the circumstances surrounding the loss. Therefore, plaintiff was on a duty of inquiry.[2]

▮▮▮ Because a duty to inquire was imposed upon her when she was informed of the loss, the second question is whether plaintiff was reasonably diligent in investigating the facts surrounding the loss which formed the basis of her cause of action. While this presents a question of fact ordinarily to be determined by the trier of fact, if the material facts are not in dispute the question can be decided as a matter of law. *See Shire Dev. v. Frontier Invs.,* 799 P.2d 221, 222 (Utah App.1990). This principle is still intact after *Berenda,* although the Court in that case cautioned "that weighing the reasonableness of the plaintiff's conduct in light of the defendant's steps to conceal the cause of action necessitates the type of factual findings which preclude summary judgment in all but the clearest of cases." 914 P.2d at 54. This is such a case.

Plaintiff, as a matter of law, did not exercise reasonable diligence to discover her cause of action against defendants. After learning of the loss in 1984, plaintiff did nothing for the next six years to determine her rights vis-a-vis this loss, even though she understood the funds in trust were her "nest egg" and "untouchable." She admitted she had access to lawyers and accountants but that she did not seek help from anyone when she was informed her "nest egg" had been lost. She had possession of the trust instruments, which contain no express language allowing for the funds to be margined or otherwise put at undue risk. She was entitled to receive, but never requested, an annual accounting of the trust funds, including a

---

**2.** "A duty of inquiry requires the party to make inquiry and to diligently do that which the answer to the inquiry reasonably prompts." *Diversified Equities, Inc. v. American Sav. & Loan Ass'n,* 739 P.2d 1133, 1137 n. 5 (Utah App.1987), *cert. dismissed,* 779 P.2d 634 (Utah 1989). We reject plaintiff's contention, premised on *Eisenb-* *aum v. Western Energy Resources, Inc.,* 218 Cal. App.3d 314, 267 Cal.Rptr. 5, 11 (1990), that she had a lesser duty to inquire because she was in a trust relationship with defendants. Of course, she was not—her trust relationship was with her son, not with her son's stockbroker.

statement of receipts and disbursements. Levi Strauss is the largest apparel manufacturer in the world. Simple inquiry of any stockbroker or a cursory reading of a daily newspaper would dispel any suggestion that the entire stock market had crashed, or even that Levi Strauss had. Plaintiff understood the Levi Strauss stock formed the basis both of her trust fund and her son's, yet closed her eyes to the reality that he was spending lavishly, having recently purchased two automobiles and a luxurious home, at the very time he claimed their stock had vaporized.

Even assuming the handwritten letter authorizing the transfers was the "smoking gun" without which plaintiff had no cause of action,[3] had she been reasonably diligent in her inquiry she would have discovered the letter much sooner than six years after her loss. Although plaintiff relied on her son and trusted his judgment, she acknowledges she should have been "better at" asking about what happened to her "nest egg."

■ Plaintiff had a duty to inquire, which should have prompted an investigation in timely fashion. She did not investigate the facts at all, let alone with the requisite degree of reasonable diligence. Therefore, the discovery rule does not serve to validate her otherwise untimely lawsuit.[4]

## CONCLUSION

Plaintiff was on notice of circumstances that should have prompted further inquiry from the time she was told the Levi stock had been lost. She had a duty to inquire but did not. Therefore, even assuming it is proper to analyze her claims under the discovery rule, plaintiff does not prevail. Reasonably diligent inquiry would have revealed the facts surrounding her loss, and any cause of action she had, well before December of 1986. In bringing her action in December of 1990, she brought it more than four years beyond when, had she diligently investigated her loss, she should have discovered whatever cause of action she had. It follows that her claim is barred by the statute of limitations and that the judgment of dismissal must be affirmed.

GREENWOOD and WILKINS, JJ., concur.

---

**3.** The proposition seems doubtful. Plaintiff's main theory is that Dean Witter violated its own internal guidelines in facilitating the investment of trust-held stock in risky ventures. Such a theory is itself questionable, *see e.g.*, Utah Code Ann. § 75-7-406 (1993) (third persons not bound to inquire of trustee's authority), but in any event the letter seems to have little to do with making the case against Dean Witter and Pahnke, although it might be significant in proving an action for breach of fiduciary duty against James, which action plaintiff chose not to file, apparently in deference to the family relationship.

**4.** There is an alternative basis on which the judgment in this case can be sustained. *Berenda*

recognized that summary judgment in cases like the instant one "is appropriate ... when the facts underlying the allegation of fraudulent concealment are so tenuous, vague, or insufficiently established that they fail to raise a genuine issue of material fact as to concealment." 914 P.2d at 54. Aside from her own son's lies to her, plaintiff shows no efforts at actual concealment undertaken by Pahnke or Dean Witter. Nor does she establish why her son's fraudulent concealment is chargeable to defendants.