Nancy SAFSTEN, Plaintiff and Appellant,

v.

LDS SOCIAL SERVICES, INC., a Utah corporation; Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-day Saints, a Utah corporation; and Does 1–30, Defendants and Appellees.

No. 960544–CA.

Court of Appeals of Utah.

July 10, 1997.

Richard G. Hackwell, Salt Lake City, for Appellant.

David M. McConkie and Merrill F. Nelson, Salt Lake City, for Appellees.

Before BILLINGS, JACKSON and ORME, JJ.

## OPINION

BILLINGS, Judge:

Appellant Nancy Safsten appeals the trial court's order granting summary judgment in favor of LDS Social Services, Inc., the Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter–Day Saints, and Does 1–30 (collectively the defendants). Specifically, appellant claims the trial court erred in concluding that the discovery rule did not apply, and therefore, that two sepa-

rate statutes of limitations barred her claims. We affirm.

## FACTS

Because this is a review of an order granting summary judgment, we state the facts in a light most favorable to appellant. *See Beltran v. Allan,* 926 P.2d 892, 895 (Utah.Ct. App.1996). In 1966, appellant, who was then a twenty-three-year-old college student and a member of the Church of Jesus Christ of Latter–Day Saints, became pregnant and contacted the predecessor of LDS Social Services (the Agency). During counseling sessions with the Agency, the Agency advised appellant to give the child up for adoption, because if she did not, she would ruin the child's life. The Agency assigned Gladys Carling to be the case worker in charge of appellant's case. Carling met with appellant several times between November 1966 and December 1967 to discuss placing the child for adoption. When the time for delivery arrived, appellant was admitted under an alias into St. Benedict's Hospital in Ogden, Utah, and the Agency was designated to pay her expenses. Appellant gave birth to a son on January 14, 1967.

After the delivery, appellant's physician placed her on the drug Thorazine, a sedative. Appellant asserts that while she was on the drug she was physically, mentally, and emotionally incapacitated. Two days after the birth, and while appellant was on the drug, Carling came to the hospital seeking a signature on a release in which appellant relinquished custody of her child to the Agency and consented to the child's adoption. Appellant signed the release and Carling placed the baby in the Agency's foster care.[1] Carling noted that at this time appellant appeared to be passive and indifferent and appeared to be on a sedative. Despite this, Carling believed appellant had the mental capacity to understand that she was giving up custody of her child and that she knowingly and voluntarily signed the release.

---

1. On the release appellant handwrote language which made it clear that if the family with whom the Agency placed her child could not adequately

care for her child, she desired the Agency to place the child back in her custody.

Soon thereafter, appellant visited the Agency to express her confusion and remorse from the loss of her child. The Agency told her there was nothing it could do for her. She contacted the Agency about thirty more times about the adoption in the following months. The Agency never gave her any information about the adoption or her condition at the time she signed the release. However, appellant does not claim she asked how the Agency got her consent to the adoption when she did not remember giving it.

Approximately two years later, in July 1969, appellant sent a letter to the hospital where the birth had occurred asking for records of the medical expenses she had incurred during her hospital stay so she could repay the Agency. The hospital responded with a letter stating: "Since the records of our no information maternity patients are destroyed, I can only send you an estimated amount." Appellant never asked for her medical records, only for a bill of the costs she incurred, although from her understanding of the letter she believed her medical records had been destroyed.

In 1990, appellant and the son she had given up for adoption were reunited. Then, on approximately May 29, 1990, appellant requested her son's medical records from the hospital. In response, the hospital mistakenly sent appellant her own medical records. After reading these records, appellant discovered that while she was in the hospital she had been administered the drug Thorazine. After learning this, appellant visited the Agency "to determine what documentation, if any, [the Agency] had of the authority it claimed in placing appellant's son for adoption." The Agency provided her the release she signed in the hospital. At this point appellant learned, after comparing the date of her signature to the dates in her medical records, that she was on the drug Thorazine when she signed the release.

For the next couple of years, appellant sought redress with the Agency and within the LDS Church, sending letters to numerous members of the Church's leadership. After not receiving satisfactory responses, she filed this action alleging negligence, constructive fraud, intentional infliction of emotional distress, and breach of contract for obtaining her adoption consent while she was sedated by medication.

The defendants filed a motion for summary judgment asserting that appellant's claims were barred by applicable statutes of limitations and arguing that the discovery rule had no application in the case because appellant should have known of any cause of action many years before commencing the action. The trial court granted the summary judgment dismissing appellant's lawsuit, reasoning that the cause of action accrued in 1967 when appellant knew her child had been taken. The court further determined that "[t]he administration of Thorazine was reasonably discoverable by plaintiff within the limitations period following her release from the hospital, but plaintiff failed to take reasonable steps to discover the cause of her alleged incapacity." This appeal followed.

## ANALYSIS

Appellant argues the trial court erred in dismissing her claims as barred by the applicable statutes of limitations. Specifically, she asserts her cause of action did not accrue until May 1990, when she obtained her medical records and discovered she was under the influence of medication when she signed her consent to the adoption. "Generally, a cause of action accrues 'upon the happening of the last event necessary to complete the cause of action.' However, in certain instances, the discovery rule 'may operate to toll the period of limitations "until the discovery of facts forming the basis for the cause of action." ' " *Berenda v. Langford*, 914 P.2d 45, 50–51 (Utah 1996) (citations omitted). The discovery rule applies in three narrow situations: "when mandated by statute, when a defendant has concealed a plaintiff's cause of action, or when exceptional circumstances exist." *Id.* at 51. In this case, appellant contends the discovery rule applies because defendants concealed appellant's cause of action and because exceptional circumstances exist. We examine both arguments.

## I. Concealment

■ When a plaintiff alleges "defendant took affirmative steps to conceal the plaintiff's cause of action," the discovery rule will apply to toll the statute of limitations period if the plaintiff "mak[es] a prima facie showing of fraudulent concealment and then demonstrat[es] that given the defendant's actions, a reasonable plaintiff would not have discovered the claim earlier." *Id.*

Thus, the fraudulent concealment version of the discovery rule aims to navigate a balance between two competing policies: (i) that which underlies all statutes of limitations, namely " 'to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared,' " and (ii) that of not allowing a defendant who has concealed his wrongdoing to profit from his concealment.

*Id.* at 52 (citations omitted).

■ In this case, appellant introduced no facts supporting her claim that the defendants made any effort to conceal the fact that appellant was under the influence of the drug Thorazine at the time she signed the release. The defendants never refused any request by appellant to obtain the release she signed giving up custody of her child. Further, the defendants made no effort to hide appellant's medical records so as to keep appellant from discovering she was on Thorazine at the time she signed the release. If appellant had made a call to the hospital asking for her medical records, she would have received this information before the statute of limitations had run. Appellant has not made a prima facie showing that the defendants fraudulently concealed any relevant information from her. Thus, the fraudulent concealment version of the discovery rule does not apply to this case.

■ Further, even if we were to conclude the defendants had attempted to fraudulently conceal facts from appellant, she could have discovered these facts with reasonable diligence. To determine whether a person should have discovered earlier the facts underlying the action requires a two-fold analysis: Was appellant under inquiry notice, and if so, "was she reasonably diligent in investigating the facts surrounding her loss." *Anderson v. Dean Witter Reynolds, Inc.,* 920 P.2d 575, 579 (Utah.Ct.App.1996). To determine whether someone has inquiry notice, we examine " 'whether the plaintiff has information of circumstances sufficient to put a reasonable person on inquiry.' " *Id.* (citation omitted).

In this case, appellant was aware that her son was removed from her custody and that she did not remember signing a release relinquishing custody of her child. A reasonable person, upon learning she had given up custody of her son and yet did not remember doing so, "would certainly have inquired about the circumstances surrounding the loss." *Id.* (holding reasonable person would have inquired about loss of one million dollars worth of assets). Thus, there was a duty for appellant to inquire into the circumstances surrounding her consent.

■ We next examine whether appellant "was reasonably diligent in investigating the facts surrounding the loss which formed the basis of her cause of action." *Id.* Although this is a question of fact normally left for the trier of fact, when the "material facts are not in dispute, the question can be decided as a matter of law." *Id.* We agree with the trial court that appellant did not exercise due diligence as a matter of law. *Cf. Warren v. Provo City Corp.,* 838 P.2d 1125, 1129–30 (Utah 1992) (affirming summary judgment when plaintiff made several unreturned calls to airport after airplane crash and made no other efforts to discover causes of action); *Anderson,* 920 P.2d at 579 (concluding no due diligence as a matter of law when plaintiff did not seek help after being informed she had lost over one million dollars of stock).

After being put on inquiry that something was wrong, i.e., not remembering giving her consent, appellant made no effort to determine why she did not remember signing the release. She did visit the Agency and inquired about her son and the adoption, expressing her regret about giving up her child, but she never asked for a copy of the release until 1990, nor does she allege she told the Agency that she did not remember

signing a release. Further, she never asked for her medical records to determine why she did not remember signing the release. Two years after the birth, she did ask the hospital for a bill, to which it responded, "Since the records of our no information maternity patients are destroyed, I can only send you an estimated amount." This statement makes no mention of appellant's personal medical records, which appellant never requested. A reasonable person acting with due diligence would have attempted to find out why she could not remember signing a release to give up custody of her child, especially when she felt regret each day after that event. Therefore, we agree with the trial court that appellant, as a matter of law, fails to meet the standards needed to apply the discovery rule for active concealment.

## II. Exceptional Circumstances

Appellant next claims the discovery rule should toll the running of the statute of limitations because exceptional circumstances exist.[2]

> The ultimate determination of whether a case presents exceptional circumstances that render the application of a statute of limitations irrational or unjust turns on a balancing test. However, before a court reaches this test, an initial showing must be made that the plaintiff did not know of and could not reasonably have known of the existence of the cause of action in time to file a claim within the limitation period.

*Warren*, 838 P.2d at 1129 (footnotes omitted). For the reasons expressed below, appellant should have had knowledge of her cause of action well before 1990. A reasonable person who felt regret about the loss of her child, yet did not remember relinquishing custody, would necessarily do everything in her power to determine the circumstances of why she did not remember. At the time appellant left the hospital, she knew: she was pregnant when she went into the hospital, she had a baby, she left the hospital without that baby, the defendants had custody of that baby, and she did not remember giving consent to the adoption. Thus, at the time appellant left the hospital she knew enough facts to support a duress or constructive fraud claim, i.e., the defendants claimed appellant had given her consent to the adoption, yet appellant did not remember giving that consent. A reasonable person in such a case would either immediately file a lawsuit or, at a minimum, engage in a full-scale investigation concerning the facts surrounding the alleged consent. Appellant never asked for her medical records or talked to any of the doctors or nurses to determine the cause of her lack of memory.[3] She eventually asked for a bill of her medical expenses, but that was not until two years after the birth. Though the letter she received from the hospital may have misled her, a reasonable person would have followed up to determine if, indeed, her medical records were destroyed. She did not do so because her goal was not to determine what happened at the hospital, but rather was only to determine the cost of her stay so she could repay the Agency. Further, she does not allege that she asked to see the paperwork authorizing the Agency to place her child for adoption until 1990, twenty-three years after the adoption. Based on these facts, we agree with the trial court that

2. The defendants argue that the exceptional circumstances rule cannot be applied because the rule was not adopted by the Utah Supreme Court until the defendants had already acquired a vested right to invoke the statute of limitations defense. The defendants cite *Roark v. Crabtree*, 893 P.2d 1058 (Utah 1995), to support this argument. *Roark* states that "once a party acquired a defense based upon an expired statute of limitations, that defense could not be impaired or affected by *subsequent legislation extending the limitation period.*" *Id.* at 1062 (emphasis added). Thus, *Roark* explains that the Legislature cannot alter a limitations period once it is vested. The extraordinary circumstances rule, however, does not extend the statute of limitations, but rather tolls the running of the statute. *See Myers v. McDonald*, 635 P.2d 84, 86–87 (Utah 1981). The rule is a recognition that a statute of limitations should not run if exceptional circumstances have prevented a plaintiff from discovering the facts necessary to know a cause of action. *See id.* Thus, under the rule the statute of limitations simply does not begin to run until the facts forming the basis of the cause of action could reasonably have been ascertained. We therefore reject appellant's argument.

3. The trial court expressly concluded in its Findings of Fact that the administration of Thorazine to appellant was reasonably discoverable.

a reasonable person should have known of her cause of action in the immediate years following the loss of custody of her child.

## CONCLUSION

■ Because appellant failed to demonstrate that she exercised due diligence in attempting to discover her cause of action, and because we conclude that a reasonable person should have known she had a possible cause of action after relinquishing custody of her child when she did not remember signing any release, the trial court properly refused to apply the discovery rule to toll the applicable statutes of limitations.[4] We therefore affirm the trial court's order granting summary judgment in favor of the defendants.[5]

JACKSON, J., concurs.

ORME, J., concurs in the result.

**4.** Because we conclude the discovery rule does not apply in this case and appellant's suit is barred by the applicable statutes of limitations, we need not determine whether appellant should have been granted leave to amend her complaint, as all complaints based on the facts alleged by plaintiff are time barred.

**5.** Because we reach this result affirming the trial court's order, we refuse to consider the issue, raised in the defendants' cross-appeal, that appellant's counsel violated Rule 4.2 of the Rules of Professional Conduct and hence the trial court should not have considered the affidavit of Gladys Carling. *Cf. De Baritault v. Salt Lake City Corp.*, 913 P.2d 743, 748 (Utah 1996). The defendants argue that we should decide this issue because it is likely to recur, yet is capable of evading judicial review. We disagree and refuse to analyze the issue, as the appropriate forum for its determination is with the state bar. *See State v. Leonard*, 707 P.2d 650, 653 (Utah 1985) ("The Code of Professional Responsibility does not delineate rules of evidence and procedure; it only states standards to govern an attorney's conduct.").