**2016 UT App 134**

# THE UTAH COURT OF APPEALS

LENA MCTEE,
Appellee,
*v.*
WEBER CENTER CONDOMINIUM ASSOCIATION, MUNICIPAL
BUILDING AUTHORITY OF WEBER COUNTY, AND WEBER COUNTY,
Appellants.

Opinion
No. 20150327-CA
Filed June 30, 2016

Second District Court, Ogden Department
The Honorable Michael D. DiReda
No. 140900148

Linette B. Hutton, Attorney for Appellants

C. Ryan Christensen, Attorney for Appellee

JUDGE STEPHEN L. ROTH authored this Opinion, in which SENIOR
JUDGE PAMELA T. GREENWOOD concurred and JUDGE MICHELE M.
CHRISTIANSEN concurred in the result.[1]

ROTH, Judge:

¶1     This appeal centers on the notice of claim provision
contained in the Governmental Immunity Act of Utah (the
Immunity Act). *See generally* Utah Code Ann. § 63G-7-101 *et seq.*
(LexisNexis 2014). Weber County appeals the district court's
partial denial of its motion to dismiss Lena McTee's personal
injury suit under rule 12(b) of the Utah Rules of Civil Procedure,
arguing that the district court erred when it concluded that

---

1. Senior Judge Pamela T. Greenwood sat by special assignment
as authorized by law. *See generally* Utah R. Jud. Admin. 11-
201(6).

McTee's notice of claim was timely. Because we conclude that McTee's notice of claim complied with the requirements of the Immunity Act, we affirm.

BACKGROUND

¶2      At the time of her injury, McTee was an employee of the federal government, specifically the Internal Revenue Service (the IRS). McTee worked in an office that the IRS rented in the Weber Center building located in Ogden, Utah. Several Weber County departments and agencies also occupied office space in the Weber Center. Outside the Weber Center was a sign that stated, "WEBER CENTER[,] FOR LEASING INFORMATION CALL WOODBURY CORPORATION," followed by two phone numbers, presumably the contact information for the Woodbury Corporation. Connected to the east side of the Weber Center was a parking structure for tenants and their guests.

¶3      On January 25, 2012, McTee took a break from work to smoke a cigarette. She exited the building, walked into the parking structure, and sat at a table located inside. Following her break, McTee began to walk back to the building, but, while still in the parking structure, she tripped and fell in a pothole located near a support pillar. As a result of the fall, McTee alleges she "suffered injuries to her lumbar spine, her left ankle, both of her knees, and a facial fracture, and incurred medical bills in excess of $100,000."

¶4      While McTee apparently sought medical attention for her injuries, she made no immediate effort to specifically identify the owner of the Weber Center until approximately a month later when she was approached at work by a woman who stated, "I can't believe that you fell. I've been asking my boss for over a

year to fix those potholes."[2] Later that same day, McTee and a coworker left the building to "get lunch, and then stop by [McTee's] house" so that McTee could get her cell phone to take pictures of the pothole where she fell. Upon returning from lunch, McTee discovered that "all of the potholes were filled with cement and there were cones around the area."

¶5     On February 7, 2013, slightly over a year after her injury, McTee, through her counsel, submitted a notice of claim to Weber County, the Municipal Building Authority of Weber County (Weber MBA), the Ogden City Recorder, and the State of Utah. Less than a week later, McTee's counsel submitted a GRAMA request to the Weber Center for "any and all documents relating, regarding or referring to the control, maintenance and lease of the parking lot and/or the [Weber Center]."[3] McTee's GRAMA request produced almost two hundred pages of documents and diagrams, which Weber County states "identify[] how, when and why the building, that is now the Weber Center, and the shopping mall that was directly across the street, were purchased, as well as identifying all parties involved."

¶6     The documents consist of a series of deeds and declarations apparently meant to establish the Weber Center and its attached parking structure as part of a condominium office

_____

2. McTee only identifies this woman as "Rany." McTee explains, "To this day, I am not aware of who Rany works for or who her boss was at the time." Weber County describes Rany as "an unknown person."

3. The Government Records Access and Management Act, or GRAMA, "create[s] a government records classification system" and was enacted by the Utah Legislature "to advance the cause of governmental transparency and accountability." *Deseret News Publ'g Co. v. Salt Lake County*, 2008 UT 26, ¶¶ 13, 15, 182 P.3d 372. *See generally* Utah Code Ann. § 63G-2-102 (LexisNexis 2014).

project. The resulting ownership and management structure is complicated. For example, the underlying land was aggregated through a series of deeds executed on March 18 and 19, 1997, that conveyed property from Third Tierra,[4] OWM Company,[5] and Pracvest[6] to Land of OG, LLC.[7] Additionally, Practical Building Company[8] conveyed to Land of OG a percentage ownership in five parcels of land that are identified in the attachment to this deed as "Weber Center Descriptions." The GRAMA request also included a deed of reconveyance between the title company and Land of OG; a settlement agreement between Ogden City, the Ogden City Redevelopment Agency, the Weber Center Condominium Association, and Weber County; and an addendum to that settlement agreement, which addressed any development, sale, or lease of the Weber Center. In addition, McTee's GRAMA request produced the declaration

---

4. Third Tierra was a partnership in which Jeffrey K. Woodbury, W. Richards Woodbury, and O. Randall Woodbury were general partners.

5. OWM Company was comprised of two general partners: the Wallace R. Woodbury Intervivos Trust and the Orin Richards Woodbury Intervivos Trust. W. Richards Woodbury was the attorney-in-fact and successor trustee for Wallace R. Woodbury, who was the trustee for the Wallace R. Woodbury Intervivos Trust. Orin R. Woodbury was the trustee for the Orin Richards Woodbury Intervivos Trust.

6. Pracvest was a partnership that seemed to be comprised of Orin R. Woodbury and Wallace R. Woodbury as attorneys-in-fact.

7. Land of OG was a limited liability company in which Jeffrey K. Woodbury and Orin R. Woodbury were managers.

8. Practical Building Company had the same two general partners as OWM Company.

of condominium for the Weber Center, also dated March 19, 1997.[9] The condominium declaration identified Weber MBA (described as "a Utah nonprofit corporation") and Land of OG (described as "a Utah limited liability company") as declarants. Two special warranty deeds were recorded on March 20, 1997, in which Weber MBA and Land of OG conveyed nine of the Weber Center's fifteen units to Weber MBA in one deed and the remaining six units to Land of OG in the other.

¶7    The declaration of condominium states that Weber MBA and Land of OG planned to "develop a commercial use condominium project" to be "known as The Weber Center." Section thirteen of the declaration, titled "CONDOMINIUM ASSOCIATION AND CONDOMINIUM MANAGEMENT COMMITTEE," states, "The name in which contracts shall be entered into, title to property shall be acquired, held, dealt in and disposed of, bank accounts shall be opened and suits shall be brought and defended by the Condominium Management Committee . . . is: The Weber Center Owners Association." The composition of the Condominium Management Committee is established according to the "BYLAWS OF THE WEBER CENTER OWNERS ASSOCIATION," yet another document produced in response to McTee's GRAMA request. The Condominium Bylaws provide that "[t]he Condominium Management Committee shall consist of two (2) members" and identifies Bruce H. Anderson as president and Jeffrey K. Woodbury as secretary. The declaration further provides that "[t]he Condominium Management Committee shall have the powers, duties and responsibilities . . . [t]o operate, maintain, repair, improve and replace the Common Areas and Facilities;"

---

9. The declaration of condominium describes the Weber Center as "a building containing three (3) stories and a basement level and containing fourteen (14) Units, together with the adjoining parking structure which contains three (3) stories and includes Common Areas and Facilities and (1) Unit."

"[t]o determine and pay the Common Expenses including expenses of maintenance, repair and replacement of the Common Areas and Facilities;" and "[t]o bring, prosecute and settle litigation for itself, the Condominium Association and the [Weber Center]."[10] Section six of the declaration, titled "DESCRIPTION AND OWNERSHIP OF COMMON AREAS AND FACILITIES" specifically identifies "parking areas" as being a "common area" of the Weber Center. Section fourteen of the declaration titled, "MAINTENANCE, ALTERATION AND IMPROVEMENT," states that "[t]he maintenance, replacement and repair of the Common Areas and Facilities shall be the responsibility of the Condominium Association" and that the Condominium Association "shall also maintain, replace and repair all common parking areas." And section twenty-three of the declaration, titled "NOTICES," directs that communication sent to the Condominium Management Committee be addressed care of Jeffrey K. Woodbury, Woodbury Corporation. The declaration of condominium was signed by Glen H. Burton as the chairperson of Weber MBA and Jeffrey K. Woodbury and Orin R. Woodbury as the managers of Land of OG.

¶8    In addition to seeking information on ownership and management of the Weber Center through a GRAMA request, McTee's counsel also accessed the Governmental Immunity Act Database maintained by the Utah Department of Commerce[11]

---

10. The declaration defines the Condominium Association as "The Weber Center Owners Association." The declaration then identifies "The Weber Center Owners Association" as "an unincorporated association of Owners, organized for the purposes set forth in this Declaration."

11. This database is a "tool . . . provided by the Utah Department of Commerce, in compliance with [Utah Code section] 63G-7-401(5), to retrieve address and contact information of Governmental Entities for the purpose of delivering a notice of

(continued…)

to determine if McTee had a claim against a governmental entity. McTee's counsel's search for "weber" produced sixteen results—none of which listed the Weber Center or any of the entities identified in the condominium documents, including Weber MBA, as a governmental entity.[12] His search for "weber center" produced zero results.

¶9     On March 13, 2014, following the GRAMA request and the search of the Immunity Act's database, McTee served the attorney for Woodbury Corporation and Land of OG with a summons and complaint and verified to the court that she had "complied with the requirements of [the Immunity Act]." Approximately three weeks later, McTee sent her initial discovery request, which included an interrogatory seeking "the names of any and all persons or entities who are responsible for maintaining and/or inspecting the parking structure at the Weber Center." O. Randall Woodbury (the president of the Woodbury Corporation and manager of Land of OG) signed the

---

(…continued)
claim." Utah Dep't of Commerce, Governmental Immunity Act Database, www.corporations.utah.gov/gia/index.html [https://perma.cc/ABN4-XYGB].

12. McTee's counsel's search for "weber" identified the following sixteen governmental agencies: Central Weber Sewer Improvement District, South Weber City, South Weber Water Improvement District, Taylor-West Weber Water Improvement District, Weber Area Dispatch and 911 Emergency Services District, Weber Basin Water Conservancy District, Weber County, Weber County Mosquito Abatement District, Weber County Service Area #5 (Liberty Park), Weber County Service Area #6 (W. Warren Park), Weber Fire District, Weber Human Services, Weber School District, Weber-Box Elder Conservation District, West Weber Sanitary Sewer System, and West Weber-Taylor Cemetery Maintenance District.

response to McTee's interrogatory requests and identified the responsible party "for maintaining and/or inspecting the parking structure at the Weber Center" as "Weber County." McTee asserts that it was "[a]t this point in time" that she "decided to move forward . . . against Weber County and the entities that are apparently associated with it in maintaining the parking structure."

¶10 McTee served her summons on the Weber Center Condominium Association, Weber MBA, and Weber County on June 18, 2014. Approximately three weeks later, Weber County filed a motion to dismiss McTee's suit under rules 7(c) and 12(b)(1) of the Utah Rules of Civil Procedure, arguing that McTee had "failed to comply with the mandatory requirements of [the Immunity Act] . . . by failing to file an undertaking and filing an untimely notice of claim." *See* Utah Code Ann. §§ 63G-7-402, -601 (LexisNexis 2014). After briefing by both parties, the district court heard oral argument on December 17, 2014. The district court subsequently granted in part and denied in part Weber County's motion to dismiss.[13] In making its ruling, the court stated,

> As I have reviewed the pleadings and considered the arguments, my best view of this case is that the notice of claim was timely filed. Since the Court, in its view, does not find it reasonable that circumstances at issue here would have alerted Mrs. McTee of the possibility of a claim against a governmental entity immediately after her injury

---

13. Lena McTee's husband, Eric McTee, had been a party to the suit up to this point. But the district court dismissed Eric's claim against Weber County with prejudice, finding that, because "the original notice of claim only indicated Lena McTee as a claimant," Eric had failed to timely file a notice of claim. Eric has not appealed the dismissal of his claim.

on January 25, 2012. Even setting aside time for ameliorative convalescence, the Weber Center and its parking garage [are] populated by both public and private entities.

It is not unreasonable for this Court to consider that it could have taken nearly a month to ascertain who exactly served as the entity responsible for the maintenance and upkeep of the parking garage. Therefore, the Court determines that the one-year limitations period for filing a notice of claim commenced as of February 22, 2012, and that the notice of claim filed on February 7, 2013, was timely filed.

The district court issued its written order on February 2, 2015. The court repeated in its written order that McTee's notice of claim was timely under section 78B-2-111 of the Utah Code because "it is not unreasonable that [McTee] might take a month or more to identify the entity responsible for maintaining the parking structure." Weber County now appeals.

ISSUE AND STANDARD OF REVIEW

¶11    Weber County argues that the district court erred in denying its motion to dismiss, because McTee failed to file her notice of claim within one year, as required by the Immunity Act. *See* Utah Code Ann. § 63G-7-402. Weber County's appeal presents a mixed question of law and fact. *See Provo City v. Utah Labor Comm'n*, 2015 UT 32, ¶ 10, 345 P.3d 1242 ("A mixed question of law and fact . . . involves the application of a legal standard to an established set of facts."). Although "[t]he interpretation of a statute is a question of law that we review for correctness without any deference to the legal conclusions of the district court," *Jaques v. Midway Auto Plaza, Inc.*, 2010 UT 54, ¶ 11, 240 P.3d 769, because the determination of whether "a claimant knew or with the exercise of reasonable diligence should have

known . . . [that she or he] had a claim against [a] governmental entity . . . [as well as] the identity of [that] governmental entity" depends on the facts and circumstances of the particular case, *see* Utah Code Ann. § 63G-7-401(1)(b)(i)–(ii), "we review the [district] court's determination regarding the reasonableness of the inquiry under an abuse of discretion standard," *Brewster v. Brewster*, 2010 UT App 260, ¶ 14, 241 P.3d 357. *See also State v. Levin*, 2006 UT 50, ¶ 24, 144 P.3d 1096 ("Discretion is broadest—and the standard of review is most deferential—when the application of a legal concept is highly fact dependant and variable.").

ANALYSIS

¶12    Generally, a four-year statute of limitations applies to the filing of a personal injury lawsuit based on negligence. *See* Utah Code Ann. § 78B-2-307(3) (LexisNexis 2012). But before filing suit against a governmental entity, an injured party must first file a notice of claim with that entity "within one year after the claim arises," and the suit itself must be filed within a year after the claim is denied.[14] *Id.* §§ 63G-7-402, -403 (2014). The Immunity Act provides that "a claim arises when the statute of limitations that would apply if the claim were against a private person begins to run." *Id.* § 63G-7-401(1)(a). But the statute affords some limited latitude where the identity of the responsible party as a governmental entity is in question. Specifically, the statute provides that "[t]he statute of limitations does not begin to run until a claimant knew, or with the exercise of reasonable diligence should have known," *both* "that the claimant had a claim against the governmental entity" *and* "the identity of the governmental entity." *Id.* § 63G-7-401(1)(b). The burden is on the

---

14. The only issue here is whether McTee's notice of claim was timely filed; there is no allegation that her complaint itself was untimely.

claimant in such circumstances "to prove the exercise of reasonable diligence."[15] *Id.* § 63G-7-401(1)(c).

¶13    Weber County argues that the district court erred in failing to dismiss McTee's complaint, because the Immunity Act "requires strict compliance." Therefore, according to Weber County, "McTee must submit a notice of claim *within one year* 'after the claim arises'" and, because McTee fell on January 25, 2012, she had until January 25, 2013, to file a notice of her claim. (Emphasis in original.) (Quoting Utah Code Ann. §§ 63G-7-401, -402.) However, she did not do so until February 7, 2013, "one year and 13 days following her fall." Weber County asserts that the notice was untimely because at the time of the fall, McTee had "sufficient information to lead her to the facts necessary to file a timely notice of claim" but she "failed to use 'reasonable diligence' to learn she had a claim against a governmental entity" or ascertain "the identity of the entity." Weber County argues that "'[i]n order to meet the reasonable diligence requirement,'" McTee "'must take advantage of reasonably

---

15. In its entirety, section 401(1) provides,

    (a)  Except as provided in subsection (1)(b), a claim arises when the statute of limitations that would apply if the claim were against a private person begins to run.

    (b)  The statute of limitations does not begin to run until a claimant knew, or with the exercise of reasonable diligence should have known:

        (i)   that the claimant had a claim against the governmental entity or its employee; and

        (ii)  the identity of the governmental entity or the name of the employee.

    (c)  The burden to prove the exercise of reasonable diligence is upon the claimant.

Utah Code Ann. § 63G-7-401(1) (LexisNexis 2014).

available channels of relevant information as suggested by ordinary prudence and the particular circumstances of the case.'" (Quoting *Jackson Constr. Co. v. Marrs*, 2004 UT 89, ¶ 20, 100 P.3d 1211.) Weber County asserts that McTee did not do this; it points out that McTee did not make "any attempt to call the numbers listed on the sign she saw daily when she came to work prior to the fall," she did not contact the Woodbury Corporation to obtain any information regarding ownership or maintenance of the parking structure, and she did not take "any steps to seek out information from her employer, supervisors, or other building tenants" regarding ownership of or maintenance responsibilities for the Weber Center. But McTee, in turn, asserts that "the issue revolves around whether [she] acted reasonably in ascertaining the identity of the entity responsible for the parking structure within . . . two weeks from the date of her accident." In other words, she contends that the question is not whether there were available avenues of inquiry about who was responsible for her injury but instead whether "reasonable diligence" required her to make such inquiries within thirteen days of her fall—the point in time one year prior to the date she filed her notice of claim under the Immunity Act. *See* Utah Code Ann. §§ 63G-7-401, -402.

¶14 We agree with McTee that the circumstances here would not put a reasonable person on immediate inquiry notice that the parking structure was owned or maintained by a governmental entity. As a consequence, we are not persuaded that the district court erred when it concluded, in essence, that McTee had acted with reasonable diligence: "It is not unreasonable . . . that it could have taken nearly a month to ascertain who exactly served as the entity responsible for the maintenance and upkeep of the parking garage."[16]

---

16. The court's focus on "nearly a month" reflects McTee's argument that she was not on notice that she might have a negligence claim against anyone until her conversation with

(continued…)

¶15    This court has stated that "[t]here are two concepts that must be considered in determining whether [a] plaintiff should have earlier discovered the facts forming the basis of her cause of action. The first is inquiry notice; the second is reasonable diligence." *Anderson v. Dean Witter Reynolds, Inc.*, 920 P.2d 575, 579 (Utah Ct. App. 1996). Stated differently, "Was plaintiff on notice that she might have a cause of action . . . , and, if so, was she reasonably diligent in investigating the facts surrounding her [cause of action]?" *Id.* The test for inquiry notice is "whether the plaintiff has information of circumstances sufficient to put a reasonable person on inquiry." *Id.* (citation and internal quotation marks omitted). Inquiry notice occurs "when the information would lead an ordinarily prudent person to investigate the matter further." *Inquiry Notice*, Black's Law Dictionary (10th ed. 2014); *see also Diversified Equities, Inc. v. American Sav. & Loan Ass'n*, 739 P.2d 1133, 1137 n.5 (Utah Ct. App. 1987) ("A duty of inquiry requires the party to make inquiry and to diligently do that which the answer to the inquiry reasonably prompts. . . . But . . . [it] is not a duty to disbelieve, aggressively investigate, and set straight.").

¶16    Here, the term "reasonable diligence" is not defined in the Immunity Act, so we begin by looking to the plain language of the statute. *See Valcarce v. Fitzgerald*, 961 P.2d 305, 318 (Utah 1998) (plurality opinion) ("In interpreting a statute, the court must

---

(…continued)

Rany—a conversation that McTee says first alerted her to the possibility that the pothole she tripped in might have been neglected for some time. More accurately, however, because her claim was filed with the county one year and thirteen days after she tripped and fell, the question is whether she should have had reason to know that the responsible entity was Weber County within thirteen days after her injury. We are not convinced however, that the difference between "nearly a month" and thirteen days is significant here.

look first to its plain language."). Black's Law Dictionary provides a workable start, defining "diligence" as "[c]onstant application to one's business or duty" and "[t]he attention and care required from a person in a given situation." *Diligence*, Black's Law Dictionary (10th ed. 2014). The law dictionary then goes on to define "reasonable diligence" as "[a] fair degree of diligence expected from someone of ordinary prudence under circumstances like those at issue." *Id. Reasonable Diligence*. In another context, the Utah Supreme Court has stated that "[t]o meet the reasonable diligence requirement, a plaintiff must take advantage of readily available sources of relevant information. A plaintiff who focuses on only one or two sources, while turning a blind eye to the existence of other available sources, falls short of this standard." *Jackson Constr. Co.*, 2004 UT 89, ¶ 20. *But see id.* ¶ 19 ("The reasonable diligence standard does not require a plaintiff to exhaust all possibilities . . . ." (citation and internal quotation marks omitted)). Thus, "reasonable diligence" under the statute seems to require that a person who suffered an injury take the steps that "someone of ordinary prudence" would take to discern whether she had a claim and whether it was against a particular governmental entity. *See Reasonable Diligence*, Black's Law Dictionary (10th ed. 2014). For purposes of this analysis, we assume that McTee had enough information when she fell that *someone* was potentially responsible for her injury. The question then is whether she should have discovered *whom* she had a claim against had she exercised the "attention and care required from a person" "of ordinary prudence under circumstances like those at issue."

¶17   In this case, the district court's ruling that McTee's notice of claim was timely under the Immunity Act seems primarily based on the sign outside of the Weber Center that identified the Woodbury Corporation as the entity to contact in order to lease space and on the fact that multiple tenants occupied the building. To be sure, among those occupants were some Weber County departments and agencies. But the building itself was fronted by a sign prominently displayed at the entryway from

the parking structure identifying only one entity—the Woodbury Corporation—as responsible for leasing space in the building without apparent limitation as to either government or private tenants. There is no evidence that McTee had any actual knowledge of the ownership structure of the Weber Center. The Woodbury Corporation was a private business enterprise, and based on its leasing responsibility, it might reasonably have been perceived to be the leasing agent, the building manager, the owner, or any combination of these roles. And there appears to be nothing in the circumstances that would have suggested to McTee that any of the entities occupying space in the building like her employer the IRS were its owners rather than tenants; rather, the Woodbury Corporation lease-information sign suggested the opposite. Therefore, it would not have been unreasonable under these circumstances for a person in McTee's position to have failed to immediately perceive that her claim was potentially against a branch of local government as opposed to a private owner or manager, such as the prominently identified Woodbury Corporation.

¶18   Moreover, the actual ownership and management of the Weber Center is complicated, and its connection to Weber County or any other local governmental entity is obscure. The nearly two hundred pages of documents produced in response to McTee's GRAMA request "for information regarding who owned and who was responsible" for the parking structure attached to the Weber Center consisted of various deeds, conveyances, reconveyances, settlement agreements, addendums to settlement agreements, and a declaration of condominium, all of which appear to involve various private business entities, including the Woodbury Corporation, the Weber Center Condominium Association, Land of OG, Practical Building Company, Third Tierra, OWM Company, and Pracvest. While one entity involved, Weber MBA, suggests that a local governmental entity may be involved in the Weber Center, the Weber MBA is simply one party that makes up the Condominium Association, which is itself responsible for the

upkeep and maintenance of the office building and parking structure where McTee's injury occurred. Even if McTee had immediately inquired about who owned the Weber Center, it is not obvious that the documents related to ownership and management recorded in the county's public records would have put her on notice that her claim was against a governmental entity generally or Weber County in particular. Rather, the documents appear to show that ownership of the condominium units that comprise the Weber Center was initially granted to Weber MBA and Land of OG and that management authority—and presumably maintenance responsibility—was eventually put in the hands of the Condominium Management Committee, which is composed of the president and secretary of the committee as well as the Condominium Association, which is identified only as "an unincorporated association of Owners" known as "The Weber Center Owners Association." And it is unclear that ownership of the Weber Center would have been discovered by McTee if she had immediately sought out and read the declaration of condominium, because that document itself directs individuals to send any notice or communication to the Condominium Management Committee in care of Jeffrey K. Woodbury at the Woodbury Corporation, the company whose name appeared on the sign outside the building. In addition, even if McTee herself had immediately accessed the Immunity Act's database designed to help people "retrieve address and contact information of Governmental Entities for the purpose of delivering a notice of claim," she would have found none of the entities mentioned in the documents later produced in response to her GRAMA request about the Weber Center's ownership.

¶19   Weber County argues that McTee's most direct path to the Weber Center's ownership information was to call the Woodbury Corporation using the number on the sign and simply ask. And perhaps had she done so, she would have received the same answer her attorney received from Woodbury and Land of OG's attorney in response to an interrogatory a year later—Weber County. But given that the involvement of a local

governmental entity, much less Weber County itself, would not have been obvious to someone in McTee's position at the time of injury (and thus the consequent requirement to move her suit forward at a quicker pace) the district court's determination that it was not unreasonable for approximately a month to pass before McTee became aware of the possibility that her claim was against a governmental entity and then to have discovered the identity of the particular governmental entity involved seems adequately supported.[17] *See Anderson*, 920 P.2d at 579 ("[T]he test[ for inquiry notice] is whether the plaintiff has information of circumstances sufficient to put a reasonable person on inquiry." (citation and internal quotation marks omitted)). Thus,

---

17. We note that the circumstances here are unusual. We have concluded that, because the involvement of a governmental entity in the ownership and/or management of the Weber Center was obscure—indeed, obscured,—a duty of inquiry was not immediately triggered and therefore was not required by reasonable diligence. But had McTee's inaction extended much beyond the month or so that it did, it would have become increasingly more difficult for her to establish that she had acted with ordinary diligence as a person who had been seriously injured by what was possibly a dangerous condition on the property of another. Although the narrow time frames of the Immunity Act might not yet have become a concern (because she still did not have information about government responsibility), the generally applicable four-year statute of limitations for personal injury claims would not itself define the outer limit of personal prudence in caring for one's own interests that constitutes reasonable diligence. In other words, the limits of ordinary prudence could be reached long before the passage of the statute of limitations, and a failure to actively seek out the identity of even a private party potentially responsible for an injury could be found dilatory if the inaction was unreasonably prolonged. The district court, however, determined that was not the case, and we agree.

we determine that there was sufficient evidence to support the district court's conclusion that McTee would not reasonably have been on notice to inquire as to the identity of the person or entity responsible for the Weber Center before she actually did, much less thirteen days after her injury. We also conclude that she therefore met the requirement of reasonable diligence under the circumstances here—"[a] fair degree of diligence expected from someone of ordinary prudence under circumstances like those at issue." *See Reasonable Diligence*, Black's Law Dictionary (10th ed. 2014). Accordingly, we cannot say that the district court's conclusion that McTee's notice of claim was timely filed was an abuse of its discretion. *See State v. Levin*, 2006 UT 50, ¶ 24, 144 P.3d 1096 ("Discretion is broadest—and the standard of review is most deferential—when the application of a legal concept is highly fact dependant and variable.").

¶20    As a final note, we do not believe, as the county argues, that the district court's decision here runs afoul of the well-established principle that the Immunity Act demands strict compliance. *See Wheeler v. McPherson*, 2002 UT 16, ¶¶ 12, 13, 40 P.3d 632 ("[T]he Immunity Act demands strict compliance with its requirements to allow suit against governmental entities. The notice of claim provision, particularly, neither contemplates nor allows for anything less."). The Utah Supreme Court seems to focus the concept of strict compliance on the requirement that parties adhere to "the exactness required by the Immunity Act," *id.* ¶ 12, which has focused on the deadlines there set forth, *see, e.g.*, *Rushton v. Salt Lake County*, 1999 UT 36, ¶ 22, 977 P.2d 1201 (concluding that plaintiff's claim was untimely because he "did not file his action within one year after the claim was either denied or deemed to be denied"); *Larson v. Park City Mun. Corp.*, 955 P.2d 343, 346 (Utah 1998) (holding that plaintiff's notice of claim was timely because it was filed with the correct body of government within one year); *Yearsley v. Jensen*, 798 P.2d 1127, 1129 (Utah 1990) (affirming the district court's decision to dismiss plaintiff's suit as time-barred because she had filed her notice of claim one day late). But there is no indication that the

provisions of the Immunity Act that do not lend themselves to exact measurement, such as the determination of when a party reasonably ought to have known that her claim was against a particular governmental entity and whether she has exercised reasonable diligence in that endeavor, are meant to be more strictly assessed and applied than in any other context in which such concepts play a part. *Cf. Sawyer v. Department of Workforce Servs.*, 2015 UT 33, ¶ 22, 345 P.3d 1253 ("It would be impossible for appellate courts to spell[] out, in advance, how each potentially relevant fact should affect the legal outcome, and we have therefore entrusted these determinations of reasonableness to district judges' superior knowledge of the evidence of the case and to trial juries' superior knowledge of the community standards that govern the behavior of reasonable people." (alteration in original) (citation and internal quotation marks omitted)).[18]

---

18. Weber County also asks us to address the following question: "Should the trial court have made findings of what conduct by Ms. McTee met the 'reasonable diligence' standard in [the Immunity Act] rather than speculating that a month was 'not unreasonable' to determine who was responsible for maintenance of the parking garage?" But Weber County did not challenge the adequacy of the findings in the district court and therefore has not preserved this issue for appeal. *See 438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 56, 99 P.3d 801 (holding that a party must challenge in the district court the adequacy of the court's factual findings in order to preserve the issue for appeal); *see also In re K.F.*, 2009 UT 4, ¶ 63, 201 P.3d 985 ("We decline to offer such a remedy unless the petitioner first provided the trial court the opportunity to correct the error."). In any event, we believe that the nature of our analysis of the principal issue presented on appeal deals adequately with the factual underpinnings of the district court's decision.

CONCLUSION

¶21 The district court appropriately concluded that McTee's notice of claim was timely filed under the Immunity Act. We therefore affirm the court's decision to deny Weber County's motion to dismiss.

_____