2024 UT App 48

# THE UTAH COURT OF APPEALS

SUZANNE M. MUIR,
Appellant,
*v.*
WASATCH FRONT WASTE & RECYCLING DISTRICT AND
JASON L. GATES,
Appellees.

Opinion
No. 20221054-CA
Filed April 4, 2024

Third District Court, West Jordan Department
The Honorable L. Douglas Hogan
No. 220902274

Joshua P. Berrett, Attorney for Appellant

Gregory N. Hoole, Attorney for Appellees

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES RYAN M. HARRIS and JOHN D. LUTHY concurred.

ORME, Judge:

¶1      Suzanne M. Muir and Jason L. Gates were involved in a
vehicular collision between Muir's SUV and a garbage truck
driven by Gates but owned by Wasatch Front Waste & Recycling
District (Wasatch). Over two years after the collision, Muir filed
suit against Wasatch and Gates alleging negligence on the part of
Gates and vicarious liability on the part of Wasatch. She sought
damages for her ongoing and future pain, suffering, and injuries.
Wasatch and Gates filed a motion to dismiss, contending that
Muir's suit was untimely because it had been commenced after
the two-year statute of limitations provided by the Governmental
Immunity Act of Utah (the GIA) had expired. The district court
ultimately dismissed the case with prejudice.

¶2   Muir now appeals, arguing that the court's application of the GIA was incorrect. She contends that her "notice" of Wasatch's status as a governmental entity was not triggered until weeks after the collision occurred and, therefore, that the statute of limitations was tolled until such time as she "should have known" about Wasatch's governmental status. Because the district court correctly applied the statute of limitations, we affirm.

BACKGROUND[1]

¶3   On March 16, 2020, while driving her SUV, Muir was involved in a collision with a garbage truck driven by Gates.[2] Immediately following the collision, the drivers exchanged information, and each received a Driver Exchange of Information form from the police officer who responded to the scene. The information form specified that the garbage truck was owned by "WASATCH FRONT WASTE & RECYCLE" and insured through "GOVERNMENT TRUST." Within a few days, Muir retained counsel, and on March 20, 2020, counsel faxed a letter of representation and a request for confirmation of policies to Wasatch's insurance carrier, identifying "Your Insured" as "WASATCH FRONT WASTE & RECYCLING DISTRICT." On April 15, 2020, Muir received a response from the insurance

---

1. When we review a court's decision regarding a motion to dismiss, "we accept all facts alleged as true, and indulge all reasonable inferences in favor of the plaintiff." *HKS Architects Inc. v. MSM Enters. LTD*, 2021 UT App 70, ¶ 17, 496 P.3d 228 (quotation simplified).

2. Because the underlying facts of the collision are not disputed, we have no need to recount them here.

carrier on the letterhead of "Constitutional State Services, TPA[3] For Utah Local Governments Trust." There, the matter sat for many months, and then on March 3, 2021, Muir filed a notice of claim consistent with the requirements of the GIA. *See* Utah Code Ann. §§ 63G-7-401, -402 (LexisNexis 2019 & Supp. 2023).

¶4      On April 12, 2022, Muir filed her complaint against Gates and Wasatch, alleging negligence and vicarious liability. The defendants responded with a motion to dismiss, arguing that Muir's complaint was untimely and should be dismissed for "failure to state a claim upon which relief can be granted," *see* Utah R. Civ. P 12(b)(6), because the suit was commenced after the two-year statute of limitations specified by the GIA had expired, *see* Utah Code Ann. § 63G-7-403(2)(b) (LexisNexis Supp. 2023).[4] The defendants contended that a claim governed by the GIA arises "when the statute of limitations that would apply if the claim were against a private person begins to run," *see id.* § 63G-7-401(1)(a), but acknowledged that the statute of limitations may be tolled until such time as "a claimant knew, or with the exercise of reasonable diligence should have known: (i) that the claimant had a claim against the governmental entity or the governmental entity's employee; and (ii) the identity of the governmental entity or the name of the employee," *id.* § 63G-7-401(1)(b). Quoting our Supreme Court's decision in *Greene v. Utah Transit Authority*, 2001 UT 109, 37 P.3d 1156, the defendants asserted that "Utah law mandates strict compliance with the requirements of the [GIA]," *id.* ¶ 12, and that a plaintiff's

---

3. "TPA" is an abbreviation for third-party administrator.

4. Because the applicable provisions of the Utah Code in effect at the relevant time do not differ from those currently in effect in any way material to this appeal, we cite the current version of the code for convenience.

"failure to comply . . . requires a trial court to dismiss a complaint," *id.* ¶ 16.

¶5    Muir opposed the motion to dismiss. She principally contended that her complaint was timely because she "lacked notice—actual, constructive, or inquiry—that Wasatch . . . was a governmental entity" and under the GIA, the two-year statute of limitations may be tolled until such time as she "knew, or with the exercise of reasonable diligence should have known," that she had a claim against a governmental entity and the identity of the governmental entity. *See* Utah Code Ann. § 63G-7-401(1)(b).

¶6    Muir argued that the defendants "failed to show" how she should have known about Wasatch's status as a governmental entity earlier.[5] She further asserted that, following the collision, she had diligently tried to identify Wasatch's status. She

_____

5. In so arguing, Muir seemingly misunderstood section 63G-7-401(1)(c) of the Utah Code. Under this section, "The burden to prove the exercise of reasonable diligence is upon the claimant." Therefore, while Muir is correct in arguing that Wasatch did not "show" how she should have exercised reasonable diligence, this was not Wasatch's burden; it was Muir's.

We previously addressed reasonable diligence in *McTee v. Weber Center Condominium Ass'n*, 2016 UT App 134, 379 P.3d 41. In that case, we determined that "reasonable diligence under the statute seems to require that a person who suffered an injury take the steps that someone of ordinary prudence would take to discern whether she had a claim and whether it was against a particular governmental entity." *Id.* ¶ 16 (quotation simplified). We noted that "the reasonable diligence standard does not require a plaintiff to exhaust all possibilities," but "a plaintiff who focuses on only one or two sources, while turning a blind eye to the existence of other available sources, falls short of this standard." *Id.* (quotation simplified).

contended that her research, which included Wasatch's corporate webpage, multiple web searches, and multiple police reports, did not point her to anything suggesting that Wasatch was a governmental entity. To the contrary, she argued, Wasatch's website included the top-level domain designation of ".org," which she argued was more indicative of a private entity—as opposed to the ".gov" designation, which would be more clearly indicative of a governmental entity. Based on her research, Muir contended that there were no practical indications that she "should have known" that Wasatch was a governmental entity or that her claim fell under the GIA until April 15, 2020, when she received the insurance carrier's letter on the letterhead of "Constitutional State Services, TPA For Utah Local Governments Trust." She contended that this case should be distinguished from *Amundsen v. University of Utah*, 2019 UT 49, 448 P.3d 1224, in which our Supreme Court held that there were numerous clear indicators that a physician working at a University of Utah clinic was working for a governmental entity. *See id.* ¶ 35. She asserted that before receiving the letter on April 15, 2020, any information she had been given or had obtained was insufficient to put her on inquiry notice regarding Wasatch's status and the applicability of the GIA's abbreviated statute of limitations.

¶7 Muir also argued that "the question of when a plaintiff knew or should have known sufficient facts to trigger a statute of limitations presents a classic factual dispute that should be resolved by the finder of fact." *See Arnold v. Grigsby*, 2010 UT App 226, ¶ 13, 239 P.3d 294 (quotation simplified), *aff'd on other grounds*, 2012 UT 61, 289 P.3d 449. But she recognized that "[w]here the evidence is so clear that there is no genuine factual issue, . . . the determination can be made as a matter of law."

¶8 In its reply, the defendants made two arguments. First, they argued that Muir bore the burden to show reasonable diligence because the GIA plainly indicates that "[t]he burden to prove the exercise of reasonable diligence is upon the claimant."

Utah Code Ann. § 63G-7-401(1)(c). Second, they asserted Muir had actual or, at the very least, inquiry notice of Wasatch's status because the information form provided to Muir on the very date of the collision, March 16, 2020, clearly showed that Wasatch owned the garbage truck and that it was insured by "GOVERNMENT TRUST." Additionally, the defendants pointed to the letter Muir sent to Wasatch's insurance carrier on March 20, 2020, that listed Wasatch's full name as "WASATCH FRONT WASTE & RECYCLING DISTRICT," with the "district" reference further demonstrating that Muir "knew" or "should have known" that she was "dealing with a government district." Thus, the defendants argued, the information possessed by Muir "would have removed any doubt" about Wasatch's status or, at the very least, triggered a duty of inquiry that could have easily been satisfied with a simple phone call on March 20, 2022, or a day or two thereafter. The defendants argued that based on the information form and the insurance letter, "no reasonable juror could conclude that [Muir] did not have either actual notice or inquiry notice" and, thus, no genuine issue of fact precluded dismissal.

¶9 The district court heard argument on the motion to dismiss. The parties' arguments were consistent with their written submissions. Ruling from the bench and later memorializing its ruling in a written order, the court concluded that the defendants' arguments were "well placed and well taken," and the court dismissed the case with prejudice.

¶10 Muir appeals.

ISSUE AND STANDARD OF REVIEW

¶11 Muir contends that the district court incorrectly determined that she "knew" or "should have known" that Wasatch was a governmental entity before April 12, 2020—the date two years before she filed her complaint—and, therefore, that

the court erred in dismissing her complaint as barred by the applicable statute of limitations. *See* Utah R. Civ. P. 12(b)(6). "The propriety of a trial court's decision to grant or deny a motion to dismiss under rule 12(b)(6) of the Utah Rules of Civil Procedure is a question of law that we review for correctness." *HKS Architects Inc. v. MSM Enters. LTD*, 2021 UT App 70, ¶ 17, 496 P.3d 228 (quotation simplified). Accordingly, "we accept all facts alleged as true, and indulge all reasonable inferences in favor of the plaintiff." *Id.* (quotation simplified).[6] Such a motion should be granted "only when, assuming the truth of the allegations that a party has made and drawing all reasonable inferences therefrom in the light most favorable to that party, it is clear that the party is not entitled to relief." *Calsert v. Estate of Flores*, 2020 UT App 102, ¶ 9, 470 P.3d 464 (quotation simplified).

ANALYSIS

¶12    The question before us is whether the court correctly determined that Muir's complaint was untimely. This question turns on whether Muir exercised reasonable diligence in inquiring

---

6. In briefing the motion to dismiss, both sides filed additional materials for the district court's consideration. Neither side objected. The court considered this supplemental information, and Muir does not claim the court erred in this regard. *See generally* Utah R. Civ. P. 12(b) ("If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion must be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties must be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."). The materials are part of the record on appeal, and we likewise have considered them in deciding this case.

into Wasatch's governmental status, given her early knowledge that Wasatch was a "district" and was insured by "GOVERNMENT TRUST." We perceive no error in the court's dismissal of Muir's complaint.

¶13    In Utah, the GIA governs, among other things, "all claims against governmental entities or against their employees or agents arising out of the performance of the employee's duties, within the scope of employment, or under color of authority." Utah Code Ann. § 63G-7-101(2)(b) (LexisNexis 2019). A claim is "any asserted demand for or cause of action for money or damages . . . against a governmental entity or against an employee in the employee's personal capacity." *Id.* § 63G-7-102(2) (Supp. 2023). "[A] claim arises when the statute of limitations that would apply if the claim were against a private person begins to run." *Id.* § 63G-7-401(1)(a). *See Thomas v. Hillyard*, 2019 UT 29, ¶ 11, 445 P.3d 521 ("A statute of limitations begins to run when the last event necessary to complete the cause of action occurs.") (quotation simplified). The GIA imposes an abbreviated statute of limitations that specifies that "a claimant shall commence the action within two years after the claim arises,"[7] Utah Code Ann. § 63G-7-403(2)(b) (LexisNexis Supp. 2023), but provides that the statute of limitations may be tolled until such time as "a claimant *knew*, or with the exercise of reasonable diligence *should have known*: (i) that the claimant had a claim against the governmental entity or the governmental entity's employee; and (ii) the identity of the governmental entity or the name of the employee," *id.*

---

7. The GIA statute of limitations cuts off claims arising from vehicular accidents by half the usual time. Ordinarily, "a four-year statute of limitations applies to the filing of a personal injury lawsuit based on negligence." *McTee v. Weber Center Condo. Ass'n*, 2016 UT App 134, ¶ 12, 379 P.3d 41. *See* Utah Code Ann. § 78B-2-307(3) (LexisNexis Supp. 2023) ("An action may be brought within four years . . . for a claim involving personal property damage to the aggrieved party's motor vehicle[.]").

§ 63G-7-401(1)(b) (emphasis added). Importantly for the case before us, "[t]he burden to prove the exercise of reasonable diligence is upon the claimant." *Id.* § 63G-7-401(1)(c). In reviewing these claims, Utah appellate courts "consistently have interpreted the [GIA] to require strict compliance by plaintiffs." *GeoMetWatch Corp. v. Utah State Univ. Rsch. Found.*, 2018 UT 50, ¶ 58, 428 P.3d 1064 (quotation simplified). *See Greene v. Utah Transit Auth.*, 2001 UT 109, ¶ 12, 37 P.3d 1156 (noting that Utah courts impose "strict compliance with the requirements of" the GIA).

¶14     It is undisputed that Muir was involved in a collision with Wasatch's garbage truck on March 16, 2020, and that she filed her complaint more than two years later on April 12, 2022. Assuming the truth of the facts asserted in her complaint, Muir's complaint was obviously filed beyond the GIA's two-year statute of limitations. *See* Utah Code Ann. § 63G-7-403(2)(b). The GIA indicates that "a claim arises when the statute of limitations that would apply if the claim were against a private person begins to run," *id.* § 63G-7-401(1)(a), and generally, "the statute of limitations begins to run when the last event necessary to complete the cause of action occurs," *Thomas*, 2019 UT 29, ¶ 11 (quotation simplified). Therefore, because Muir's complaint hinged solely on the collision, the statute of limitations would have run from the date of the collision and, accordingly, Muir's complaint would be untimely if the general rule applied.

¶15     But as previously noted, the GIA provides that the statute of limitations "does not begin to run until a claimant knew, or," as relevant here, "with the exercise of reasonable diligence should have known," that the claim was "against the governmental entity." Utah Code Ann. § 63G-7-401(1)(b)(i). And as explained above, the burden to demonstrate reasonable diligence is borne by the plaintiff. *See id.* § 63G-7-401(1)(c).

¶16     Muir contended that she was unaware of Wasatch's status until she received the letter on April 15, 2020, from Constitutional

State Services. Thus, she insists, her complaint was timely when she filed it on April 12, 2022. Her complaint explained that in the four days following the collision, Muir visited Wasatch's website and that she performed various other inquiries into Wasatch sufficient to establish its full name. But despite having all this information, Muir contended that she "lacked notice—actual, constructive, or inquiry—that Wasatch . . . was a governmental entity until weeks or months following the crash."

¶17   We are not persuaded. Utah has long held that "inquiry notice occurs when circumstances arise that should put a reasonable person on guard so as to require further inquiry on his part." *First Am. Title Ins. Co. v. J.B. Ranch, Inc.*, 966 P.2d 834, 838 (Utah 1998) (quotation simplified). "Whatever is notice enough to excite attention and put the party on his guard and call for inquiry is notice of everything to which such inquiry might have led. When a person has sufficient information to lead him to a fact, he shall be deemed conversant of it." *Id.* (quotation simplified). In *Salt Lake, Garfield & Western Railway Co. v. Allied Materials Co.*, 291 P.2d 883 (Utah 1955), our Supreme Court addressed the nature of a plaintiff's inquiry notice. In that case, the Court reasoned that "means of knowledge and knowledge itself, are in legal effect, the same thing where there is enough to put a party on inquiry." *Id.* at 885 (quotation simplified). The Court further explained:

> A person has no right to shut his eyes or his ears to avoid information, and then say that he had no notice; he does wrong not to heed the signs and signals seen by him. It will not do to remain wil[l]fully ignorant of a thing readily ascertainable, and it is no excuse for failure to make an inquiry, that if made, it might have failed to develop the truth.

*Id.* at 885–86 (quotation simplified). Thus, we must determine if Muir had a duty of inquiry notice—assuming her knowledge that

the garbage truck was owned by a waste and recycling district and that it was insured by "GOVERNMENT TRUST" was somehow not enough to disclose governmental involvement—and, if so, whether the court correctly determined that she did not demonstrate that she exercised reasonable diligence in tying down that important detail more definitely.

¶18     In *Amundsen v. University of Utah*, 2019 UT 49, 448 P.3d 1224, the plaintiff argued that her many visits to a University of Utah clinic for repeated consultations were insufficient to put her on inquiry notice about her physician's status as a government employee. *See id.* ¶¶ 28, 30. Our Supreme Court concluded that a simple inquiry about the physician's status was a reasonable expectation when coupled with the informational indicators presented. *See id.* ¶¶ 32–41. Similarly, in the case at hand, Muir was presented with several indicators that Wasatch was a governmental entity, triggering her duty of demonstrating reasonable diligence in getting information that would confirm or dispel that likelihood.

¶19     First, the insurance form provided directly to Muir following the collision indicated that the garbage truck involved in the collision was insured by "GOVERNMENT TRUST." While it is conceivable that including "government" in a name is not dispositive on the question of whether the government is involved, it is surely sufficient to suggest that it may well be and sufficient to pique a reasonable person's duty to inquire further to confirm or dispel the distinct possibility that it is.

¶20     Second, the complaint acknowledged that Muir undertook additional inquiry to establish Wasatch's status. Muir again correctly argues that victims of car crashes are not required to do a "'deep dive' through the internet" to determine governmental status. But as our Supreme Court held in *Amundsen*, a direct inquiry asking about a party's governmental status is not overly burdensome and, due to its relative ease and resulting clarity, can

demonstrate a plaintiff's exercise of reasonable diligence. *See id.* ¶¶ 39, 41. The website Muir visited—and screenshots of what she saw were attached to her memorandum in opposition to Wasatch's motion to dismiss—included phone numbers and an email address. Neither Muir nor her attorney said they called and asked whether Wasatch was a private company or a governmental entity. While Muir reads much into the website address ending in ".org" rather than ".gov," neither Muir nor her attorney claimed to have sent an email to the address provided inquiring as to Wasatch's possible governmental status.

¶21   Finally, Muir's complaint acknowledged that within four days, she knew, with our emphasis, that Wasatch's full name was "WASATCH FRONT WASTE & RECYCLING *DISTRICT*." Muir is correct that there are businesses or other entities that might choose to include "district" in their names for any number of reasons. And simply including "district" in a name is not a dispositive indicator of status as a governmental entity. The District, for example, is a shopping mall in South Jordan, Utah. And District Coffee Co. does business in downtown Salt Lake City. But districts that are governmental entities abound: water districts, sewer districts, school districts, mosquito abatement districts, district courts, and so on. Given this reality, one cannot turn a blind eye to the distinct possibility that "district" may well connote governmental involvement. One must at least exercise reasonable diligence by inquiring about that possibility. And Muir did not claim that she or her attorney did so, much less that she or her attorney inquired and were misled.

¶22   In sum, immediately following the collision, Muir was presented with the identity of Wasatch's insurance carrier, which had "GOVERNMENT" in its name, and within four days she knew Wasatch's full name, which included "DISTRICT." These terms were sufficient to put her on inquiry notice. And the district court correctly concluded that Muir did not demonstrate that she

exercised reasonable diligence to determine Wasatch's governmental status.[8]

## CONCLUSION

¶23 Muir's complaint was filed more than two years after the collision that gave rise to her claim. Several indicators suggested the likelihood that the garbage truck with which Muir collided was owned by a governmental entity. She is charged with a duty of inquiry concerning whether such was indeed the case and had the burden to prove that she exercised reasonable diligence in ascertaining whether a governmental entity indeed owned the truck. The district court correctly concluded that she did not allege facts that, if true, would meet that burden. We therefore affirm its decision dismissing her complaint with prejudice.

---

8. As previously noted, *see supra* ¶ 3, Muir managed to file her pre-suit notice of claim within one year of the collision, as required by Utah Code section 63G-7-402.